[No. B065165. Second Dist., Div. Two. Apr. 30, 1993.]

MICKEY DORA, Plaintiff and Appellant, v.
FRONTLINE VIDEO, INC., Defendant and Respondent.

538

## COUNSEL

Cooney & Fineman and Lee Fineman for Plaintiff and Appellant.

James R. Rogers and John Boyce, Jr., for Defendant and Respondent.

## OPINION

**NOTT, J.**—Appellant Mickey Dora sued Frontline Video, Inc. (Frontline), among others,[1] for common law and statutory appropriation of name or likeness. He appeals from a summary judgment granted in favor of respondent. We affirm.

### FACTS AND PROCEDURAL HISTORY

In the 1950's, appellant surfed at Malibu Beach. According to respondent's evidence in support of its summary judgment motion, appellant was a "legendary figure in surfing" and his "exploits at Malibu . . . are the folklore of the sport."

In 1987, respondent produced a video documentary entitled "The Legends of Malibu" (the program). The program is, for the most part, a documentary that chronicles the events and public personalities at Malibu in the early days of surfing. Footage of famous surfers, including appellant, taken during that time appears in the program. Many of those people were interviewed for their on-camera reminiscences. The program also contains the audio portion of an interview of appellant, which is heard in the background as the viewer sees appellant in photographs. Appellant states in a declaration that he was neither interviewed nor photographed by respondent, and that he did not consent to his name, photograph, likeness, or voice being used.

Appellant brought this suit in 1990, seeking damages for the unauthorized use of his name, voice, and likeness. Respondent filed a motion for summary

---

[1]The other two defendants in the case, Capital Cities/ABC Inc., and Music Plus Video, did not join in the summary judgment motion and are not parties to the appeal. Previously, appellant successfully challenged a demurrer granted to Capital Cities/ABC Inc., without leave to amend. The order of dismissal following the demurrer was reversed by a panel of this division in June 1992 (*Dora* V. *Capital Cities/ABC Inc.* (June 9, 1992) B058715 [nonpub. opn.]).

judgment, arguing that appellant's consent was not required because the program is (1) a sports broadcast, (2) a news account and a publication of matters in the public interest, and (3) truthful and therefore protected by the Constitution. The trial court accepted respondent's arguments and granted the motion. On appeal, appellant challenges each of respondent's contentions.

## DISCUSSION

*Respondent Was Not Required to Obtain Appellant's Consent for the Program and Summary Judgment Was Proper*

### I. *The Standard of Review*

■ The summary judgment procedure aims to discover whether there is evidence requiring the fact-weighing process of a trial. (*M.B.* v. *City of San Diego* (1991) 233 Cal.App.3d 699, 703 [284 Cal.Rptr. 555]; *Powell* v. *Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 366 [212 Cal.Rptr. 395].) In reviewing the propriety of a summary judgment, the appellate court must resolve all doubts in favor of the party opposing the judgment. (*M.B.* v. *City of San Diego, supra*, at p. 703.) The reviewing court conducts a de novo examination to determine whether there are any genuine issues of material fact or whether the moving party is entitled to summary judgment as a matter of law. (*Ibid.*)

As stated above, appellant's action relies on alternative theories, one for appropriation under the Civil Code, the other for appropriation under the common law. We find that summary judgment was proper in both instances. We begin with the common law analysis.

### II. *Appellant's Common Law Cause of Action*

The law of privacy comprises four distinct kinds of invasion of four different interests. (*Lugosi* v. *Universal Pictures* (1979) 25 Cal.3d 813, 819 [160 Cal.Rptr. 323, 603 P.2d 425].) ■ The interest asserted by appellant in this case is described as " '[a]ppropriation, for the defendant's advantage, of the plaintiff's name or likeness.' " (*Ibid.*, quoting Prosser, *Privacy* (1960) 48 Cal.L.Rev. 383, 389, italics omitted.) Appropriation itself has two aspects. The difference between the two is found not in the activity of the defendant, but in "the nature of the plaintiff's right and the nature of the resulting injury." (McCarthy, The Rights of Publicity and Privacy (1992) § 5.8(C), p. 5-67.)

The first type of appropriation is the right of publicity, as was at issue in *Lugosi*, which is "in essence that the reaction of the public to name and

likeness, which may be fortuitous or which may be managed or planned, endows the name and likeness of the person involved with commercially exploitable opportunities." (*Lugosi* v. *Universal Pictures, supra,* 25 Cal.3d 813, 824.) The other is the appropriation of the name and likeness that brings injury to the feelings, that concerns one's own peace of mind, and that is mental and subjective. (*Stilson* v. *Reader's Digest Assn., Inc.* (1972) 28 Cal.App.3d 270, 273 [104 Cal.Rptr. 581], hg. den. Dec. 20, 1972.)

In this case, it seems that appellant's suit is for violation of the second type of appropriation. This we glean not from the complaint, which is general and vague, but from appellant's declaration, in which he states: "I just wish to be left alone." ██ Because we believe that in this case the analysis under both theories would be the same, we need not put too fine a point on it.[2] Whether appellant is considered a celebrity or not, whether he is seeking damages for injury to his feelings or for the commercial value of his name and likeness, we conclude that the public interest in the subject matter of the program gives rise to a constitutional protection against liability. (See *Maheu* v. *CBS, Inc., supra,* 201 Cal.App.3d at p. 676.)

 Though both celebrities and noncelebrities have the right to be free from the unauthorized exploitation of their names and likenesses, every publication of someone's name or likeness does not give rise to an appropriation action. Publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it, is not ordinarily actionable. (*Eastwood* v. *Superior Court* (1983) 149 Cal.App.3d 409, 421 [198 Cal.Rptr. 342]; see *Zacchini* v. *Scripps-Howard Broadcasting Co.* (1977) 433 U.S. 562, 574 [53 L.Ed.2d 965, 975, 97 S.Ct. 2849] [the right of publicity does not prevent reporting on newsworthy facts]; *Time, Inc.* v. *Hill* (1967) 385 U.S. 374, 388 [17 L.Ed.2d 456, 467, 87 S.Ct. 534] ["The guarantees for speech and press are not the preserve of political expression or comment upon public affairs . . . ."].) Public interest attaches to people who by their accomplishments or mode of living create a bona fide attention to their activities. (*Carlisle* v. *Fawcett Publications, Inc.,* (1962) 201 Cal.App.2d 733, 746 [20 Cal.Rptr. 405].)

---

[2]Although there is a split of opinion among jurisdictions as to whether a "non-celebrity" should have the right to sue for the commercial value of unpermitted use of personal identity (see McCarthy, *supra,* § 4.3, pp. 4-12-4-20), the case law in California assumes without discussion that the right exists. (See, e.g., *Maheu* v. *CBS, Inc.* (1988) 201 Cal.App.3d 662, 676-677 [247 Cal.Rptr. 304]; *Fairfield* v. *American Photocopy etc. Co.* (1955) 138 Cal.App.2d 82, 86 [291 P.2d 194].) Appellant is not a celebrity in terms of the general public, but the evidence in this case establishes that he achieved a certain celebrity among those members of the surfing subculture to whom the program would be of interest. It is therefore safe to say that under any standard his name and likeness were commercially exploitable to some extent.

Furthermore, matters in the public interest are not "restricted to current events; magazines and books, radio and television may legitimately inform and entertain the public with the reproduction of past events, travelogues and biographies." (201 Cal.App.3d at p. 746; but see *Johnson* v. *Harcourt, Brace, Jovanovich, Inc.* (1974) 43 Cal.App.3d 880, 890-891 [118 Cal.Rptr. 370].)

■ The program in question in this case is a documentary about a certain time and place in California history and, indeed, in American legend. The people who were a part of that era contributed, willingly or unwillingly, to the development of a life-style that has become world-famous and celebrated in popular culture. Although any one of them as individuals may not have had a particular influence on our time, as a group they had great impact. This is the point of the program, and it seems a fair comment on real life events "which have caught the popular imagination." (*Smith* v. *National Broadcasting Co.* (1956) 138 Cal.App.2d 807, 814 [292 P.2d 600].)

■ Appellant contends that the program does not meet the California criteria for newsworthiness restated in *Maheu* v. *CBS, Inc., supra*, 201 Cal.App.3d at page 675: " '(a) The social value of the facts published; (b) the depth of the intrusion into ostensibly private affairs; and (c) the extent to which an individual voluntarily acceded to a position of public notoriety. [Citations.]' " ■ Those factors, however, relate not to a cause of action for appropriation of name and likeness, but to one for the public disclosure of private facts. (*Id.* at pp. 674-675.) As stated in *Maheu*, " 'even a tortious invasion of privacy is exempt from liability if the publication of private facts is truthful and newsworthy.' " (*Id.* at p. 675.) Appellant did not sue respondent for disclosing private facts, and he has not persuaded us that the three-part standard quoted above should be applied in this case.

■ Even if we were to apply the *Maheu* standard, however, our ruling would not change. We find that the program has public interest, which gives it "social value." Though that value might be limited, so is the level of intrusion into appellant's private affairs. Indeed, beyond stating that the program "erroneously characterizes me and contains prevarications about me" appellant's evidence does nothing to establish that any private facts were disclosed. From our viewing of the program, we find in it little, if anything, of a private nature about appellant. The third point, whether appellant voluntarily became a well-known surfer, is less clear. Appellant seems to have spent a good deal of energy avoiding the limelight. As he states in his declaration, he did not cooperate with photographers and was out of the country for 20 years. Sometimes, though, those who do not seek the public eye are nevertheless sought out by it. As stated in *Carlisle*, a person may by his or her own activities or by the force of circumstances

become a public personage and thereby relinquish a part of their right of privacy " 'to the extent that the public has a legitimate interest in his [or her] doings, affairs or character.' " (*Carlisle* v. *Fawcett Publications, Inc., supra,* 201 Cal.App.2d at p. 747, quoting *Werner* v. *Times-Mirror Co.* (1961) 193 Cal.App.2d 111, 117 [14 Cal.Rptr. 208].) Furthermore, almost all of the footage of appellant was taken while he was either surfing or on the beach. One's voluntary action in a public place waives one's right of privacy as " 'there can be no privacy in that which is already public.' " (*Gill* v. *Hearst Publishing Co.* (1953) 40 Cal.2d 224, 230 [253 P.2d 441], quoting *Melvin* v. *Reid* (1931) 112 Cal.App. 285, 290 [297 P. 91].) Finally, with respect to the audiotaped interview of appellant that is part of the program, appellant did not state that it was private or given for restricted use, and we therefore assume that it was not. Publication of the interview is constitutionally protected in the absence of a showing that the publishers knew that their statements were false or published them in reckless disregard of the truth. (*Cher* v. *Forum Intern., Ltd.* (9th Cir. 1982) 692 F.2d 634, 637, cert. den.)

Thus, the three-part criteria for newsworthiness found in *Maheu* presents no basis to reverse the summary judgment.

 Appellant complains that the cover of the program packaging and the program itself "prominently" feature scantily clothed women. Apparently this is meant to establish damage to his feelings. What might be considered the most offensive of the pictures on the cover is a cartoon drawing of two bikini-clad women. However, it is not true that women are prominently featured in the program.[3] There are several scenes, apparently added in a weak attempt at humor, in which the host is surrounded by women in bikinis. While those scenes add nothing to the otherwise informative and interesting program, they are few and very short. As reasonable minds could not differ over the legitimate public interest nature of the program, no material factual issues are raised by this contention. We hold that the program contains matters of public interest and that respondent was not required to obtain appellant's consent to use his name, likeness, and voice in the program. The trial court correctly granted summary judgment as to appellant's common law cause of action for appropriation.

### III. *The Statutory Cause of Action*

Civil Code section 3344, subdivision (a) states in pertinent part: "Any person who knowingly uses another's name, voice, . . . photograph, or likeness, in any manner, on or in products, merchandise, or goods, . . . without such person's prior consent, . . . shall be liable for any damages

---

[3]All the main subjects of the program are men, with the exception of the real-life Gidget.

sustained by the person or persons injured as a result thereof." Subdivision (d) of section 3344 states: "For purposes of this section, a use of a name, voice, . . . photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, . . . shall not constitute a use for which consent is required under subdivision (a)."

The trial court found, among other things, that the program is both a sports and news account, and that it is in the public interest. Although we have doubts about whether it is a sports or news account, we have already determined that the program is in the "public interest." ■■■ We turn now to the question of whether that term is synonymous with "public affairs" as it is used in Civil Code section 3344, subdivision (d).

There is little case law on point. Two California cases, *Maheu* and *Eastwood*, involved both the statutory and common law theories and confronted the question of news and public interest. In *Maheu*, when discussing the common law claim, the appellate court found the plaintiff to be a public figure and found the publication of a book about the plaintiff and Howard Hughes had social value. (201 Cal.App.3d, *supra*, 662, 675.) In light of these two points, the court held that "newsworthiness was clearly established." (*Ibid.*) When the court reached the statutory analysis, it held without discussion that the book was protected as a news account. (*Id.* at p. 677.)

*Eastwood* involved Civil Code former section 3344. Under the former law, the use of a name or likeness "in connection with any news" was not actionable. The defendant National Enquirer argued that the story in its paper was news and therefore exempt by the statute. The appellate court stated that the resolution of the statutory cause of action would determine the plaintiff's ability to maintain the common law cause of action. (*Eastwood* v. *Superior Court*, *supra*, 149 Cal.App.3d 409, 421.) It appears that the court equated news with matters in the public interest (*ibid.*), a proposition we do not dispute.

■■■ Civil Code section 3344, subdivision (d) distinguishes between news and public affairs. We presume that the Legislature intended that the category of public affairs would include things that would not necessarily be considered news. Otherwise, the appearance of one of those terms in the subsection would be superfluous, a reading we are not entitled to give to the statute. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) We also presume that the term "public affairs" was intended to mean something less important than news. (But see *Zacchini* v. *Scripps-Howard Broadcasting Co.*, *supra*, 433 U.S. 562, 578 [53 L.Ed.2d 965, 978] ["entertainment itself can be important news."].) Public affairs must be related to real-life occurrences. As has been established in

the cases involving common law privacy and appropriation, the public is interested in and constitutionally entitled to know about things, people, and events that affect it. For that reason, we cannot limit the term "public affairs" to topics that might be covered on public television or public radio. To do so would be to jeopardize society's right to know, because publishers and broadcasters could be sued for use of name and likeness in documentaries on subjects that do not relate to politics or public policy, and may not even be important, but are of interest.

Having said that, we find that surfing is of more than passing interest to some. It has created a life-style that influences speech, behavior, dress, and entertainment, among other things. A phenomenon of such scope has an economic impact, because it affects purchases, travel, and the housing market. Surfing has also had a significant influence on the popular culture, and in that way touches many people. It would be difficult to conclude that a surfing documentary does not fall within the category of public affairs. We therefore hold that the use of appellant's name and likeness is among the uses exempt from consent in Civil Code section 3344, subdivision (d).

In light of the foregoing resolution of this matter, we need not discuss whether the program is a news or sports broadcast.

### Disposition

The judgment is affirmed. Each party to bear its own costs on appeal.

Boren, P. J., and Fukuto, J., concurred.