**WILLIAM O'NEIL & CO. INC,** a California corporation, and **William O'Neil,** an individual, Plaintiffs,

v.

**VALIDEA.COM INC.,** a Connecticut corporation, **Dearborn Financial Publishing, Inc.,** a Michigan corporation, and Does 1–10, inclusive, Defendants.

No. CV01–10726 AHM(MANX).

United States District Court, C.D. California.

Jan. 31, 2002.

Carla J. Feldman, Negin Mirmirani, Loeb & Loeb, Los Angeles, CA, for Plaintiff.

Slade R. Metcalf, Katherine M. Bolger, Squadron, Ellenoff, Plesent & Sheinfeld, New York City, Anthony M. Basich, Julia A. Shapard, Squadron, Ellenoff, Plesent & Sheinfeld, Los Angeles, CA, for Defendants.

**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND GRANTING DEFENDANT'S MOTION TO DISMISS**

MATZ, District Judge.

## I.

### INTRODUCTION

Defendants authored and published a book describing and analyzing the investment strategies of well-known financial analysts and stock pickers, including Plaintiff William O'Neil. O'Neil did not consent to Defendants' use of his name or investment strategies. O'Neil and his company seek to enjoin Defendants from distributing the book on the basis that they have infringed his right of publicity and have committed unfair competition. Defendant Dearborn seeks to dismiss Plaintiffs' complaint on the grounds that the book is protected by the First Amendment. For the reasons stated herein, Dearborn's motion to dismiss is GRANTED with leave to amend, and Plaintiffs' motion for preliminary injunction is DENIED WITHOUT PREJUDICE.

## II.

### FACTS

Plaintiff William O'Neil is a well-known financial analyst and stock market strategist. He is the founder and chairman of Plaintiff William O'Neil & Co., Inc. ("The Company"), a national investment information company that provides securities research, advisory and trading services to institutional clients in the United States, Europe, Asia and Australia. O'Neil Decl. ¶¶ 2, 3. He also formed other companies, including Investor's Business Daily ("IBD"), a national business newspaper

that competes with the Wall Street Journal. *Id.*

O'Neil has published two best-selling books discussing investment strategies, one entitled *How To Make Money in Stocks—A Winning System In Good Times Or Bad* and the other entitled *24 Essential Lessons For Investment Success.* O'Neil Decl. ¶¶ 5, 6.

In August 2001, Plaintiffs learned that Defendant Dearborn Publishing was planning to publish a book entitled *The Market Gurus: Stock Investing Strategies You Can Use from Wall Street's Best.* Defendants have lodged a copy of the book with the Court. The authors of the book are John Reese and Todd Glassman, the Chairman and Investment Strategies Product Manager, respectively, of Defendant Validea.com ("Validea"), an Internet website that posts and analyzes the investment strategies of well-known financial analysts and stock pickers.[1] *The Market Gurus,* like the website, contains the authors' assessments of various investment strategies, and also describes the methods used by the "gurus" to reach these conclusions. Each chapter of the book profiles a different market guru, and William O'Neil is profiled in Chapter 3. The book profiles nine market gurus in all, and their names (including O'Neil's) are listed on its front cover under the title. Feldman Decl.Ex. A.

Each chapter of the book begins with an overview section that answers the question: "Which Investors Might Use" the particular guru profiled in that chapter. The overview briefly describes the risk level of the guru's investment strategy, the "time horizon" for investment, and the "effort" required to follow the strategy.

On August 21, 2001, Plaintiffs' counsel, Carla Feldman, wrote to Validea and the book's authors, informing them that Plaintiffs did not consent to the use of Mr. O'Neil's name or any reference to his commercial business methodologies in their book. In addition, the letter stated that the book "inaccurately described the basis and philosophy" of Mr. O'Neil's methods and products. The letter requested that the authors remove the chapter on O'Neil from *The Market Gurus.* Feldman Decl. Ex. D. On August 24, 2001, Dearborn's counsel, Sara Pearl, wrote to Ms. Feldman, informing her that *The Market Gurus* would not be distributed until she had a chance to address Ms. Feldman's concerns. Ms. Pearl asked Ms. Feldman whether she could identify the specific ways in which Mr. O'Neil believed that *The Market Gurus* was inaccurate. Feldman Supp.Decl. ¶ B.

On October 19, Ms. Feldman responded that the book "fails to reference the critical inclusion of chart reading in making stock selections. In addition, it falsely suggests that Mr. O'Neil would recommend a stock as a 'buy,' a suggestion which runs counter to Mr. O'Neil's entire methodology. It also falsely describes the CAN SLIM strategy as 'high risk' and omits pertinent components of CAN SLIM such as the trend of the overall market." Feldman Supp.Decl.Ex. C. Ms. Feldman went on to state "[a]side from the fact that the inaccuracies are too numerous to set forth here, we do not believe that it is incumbent upon [The Company] to give you a detailed account of the inaccurate and inappropriate materials contained in the galley provided by Dearborn Publishing." *Id.* Ms. Feldman again requested that Dearborn re-

---

1. Plaintiffs' supplemental brief in support of their motion indicates that they have reached a tentative settlement with Validea, and that once the appropriate closing documents are executed, Plaintiffs will file a Request for Dismissal of Validea.

frain from using Mr. O'Neil's name or methodologies. *Id.*

On November 9, 2001, Slade Metcalf, outside counsel for Dearborn, responded that because the book represented the authors' opinion about Mr. O'Neil's methodologies, it was not actionable as libel or defamation. Mr. Metcalf also stated: "With respect to any factual inaccuracies . . . [t]he fact that you have chosen not to [identify specific errors] means that our client has not been placed on notice of any particular factual inaccuracies and therefore could not be in a position to make an appropriate correction prior to full distribution of the Book." Feldman Decl.Ex. E. The letter went on to advise Ms. Feldman that Dearborn was proceeding to publish and distribute the book, complete with references to Mr. O'Neil.

On December 4, 2001, Plaintiffs filed suit in state court seeking damages and injunctive relief. The complaint alleges claims for unfair competition under Cal. Bus. & Prof.Code § 17200, *et seq.*, and commercial misappropriation under Cal.Civil Code § 3344. Defendants removed the case to federal court on December 13, 2001. Plaintiffs move for a preliminary injunction, while Defendants move to dismiss the case. Because the Court concludes that Plaintiffs' complaint should be dismissed, it does not reach the question whether Plaintiffs are entitled to a preliminary injunction.

## IV.

## ANALYSIS

### A. *Legal Standards Governing Motions to Dismiss*

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit Partnership v. Turner Broadcasting System, Inc.,* 135 F.3d 658, 661 (9th Cir.1998). "[A] complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. . . . However, material which is properly submitted as part of the complaint may be considered" on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994) (*citing Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir.1991)).

### B. *Commercial Misappropriation*

#### 1. Legal Standards

■ California provides both a statutory and common law remedy for appropriation, for the defendant's advantage, of a plaintiff's name or likeness (also known as infringement of the right of publicity). "A common law cause of action for appropriation of name or likeness may be pleaded by alleging (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3)

lack of consent; and (4) resulting injury." *Eastwood v. National Enquirer, Inc.,* 149 Cal.App.3d 409, 198 Cal.Rptr. 342, 347 (1984) (citations omitted). "In addition, to plead the statutory remedy provided in Civil Code section 3344, there must also be an allegation of a knowing use of the plaintiff's name, photograph or likeness for purposes of advertising or solicitation of purchases." *Id.* (citation omitted).[2]

Here, Plaintiffs have alleged that Defendants used O'Neil's name and identity in their book *The Market Gurus* and its related advertising, without O'Neil's prior consent, for the purpose of promoting sales of *The Market Gurus.* Complaint ¶¶ 26–32. Therefore, unless an exception applies, Plaintiffs have stated a claim for common law misappropriation. Moreover, Plaintiffs have alleged that Defendants knowingly used O'Neil's name to advertise their book. Complaint ¶¶ 28, 30. Therefore, unless an exception applies, Plaintiffs also have stated a claim for statutory misappropriation.

Subsection (d) of § 3344 provides, *inter alia,* that "[f]or purposes of this section, a use of a name, photograph or likeness in connection with any news ... shall not constitute a use for purposes of advertising or solicitation." As the *Eastwood* court explained, if a use falls within the "news" exception under statutory misappropriation, it is not actionable under common law misappropriation because "[p]ublication of matters in the public interest, which rests on the right of the public to know, and the freedom of the press to tell it, cannot ordinarily be actionable." *Eastwood,* 149 Cal.App.3d at 421, 198 Cal.Rptr. 342. The

"news" exception is "not restricted to current events: magazines and books, radio and television may legitimately inform and entertain the public with the reproduction of past events, travelogues and biographies." *Id.* (citation omitted). *See also Dora v. Frontline Video, Inc.,* 15 Cal. App.4th 536, 543, 18 Cal.Rptr.2d 790 (1993) (broadly construing the "news" exception to apply to a documentary that chronicled the events and public personalities at Malibu in the early days of surfing).

The determination whether a given use is actionable "necessitate[s] a weighing of the private interest of the right of publicity against matters of public interest calling for constitutional protection, and a consideration of the character of these competing interests." *Id.* at 421–22, 198 Cal.Rptr. 342. In *Eastwood,* the National Enquirer published an article discussing the purported romantic involvements of Clint Eastwood with other celebrities. The National Enquirer also used Eastwood's name and likeness to promote that particular issue of its journal. Eastwood claimed that the Enquirer infringed his right of publicity. In determining whether the Enquirer's First Amendment rights outweighed Eastwood's right to control the use of his name and likeness, the court held that the subject matter of the Enquirer article was undoubtedly "a matter of public concern, which would generally preclude the imposition of liability." *Id.* at 423, 198 Cal.Rptr. 342. Eastwood argued that the Enquirer was nonetheless liable because the article was false.

**2.** Plaintiffs' complaint only states a claim for statutory misappropriation, even though Plaintiffs proceed in their papers as though they have also alleged common law misappropriation. The Court will dispose of these motions as if they had pled both, because the result would be the same even if they had pled common law misappropriation. Com-

plaint ¶ 26–32. If Plaintiffs wish to proceed with a claim for common law misappropriation, they should allege it in an amended complaint (if they choose to file one). If Plaintiffs fail to allege common law misappropriation in an amended complaint, they will not be permitted to proceed under that theory.

The court held that the same standards governing the imposition of liability upon a publisher for defamation, as articulated in *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny, govern whether a publisher of "news" may be liable for invasion of privacy through commercial misappropriation under § 3344. *Id.* at 423–24, 198 Cal.Rptr. 342. A "public figure" plaintiff "may not recover except upon a showing that the defendant [acted] with *actual malice* ... i.e. either with knowledge of their falsity or with reckless disregard for the truth." *Id.* at 424, 198 Cal.Rptr. 342 (citations omitted). Similarly, in cases where the material published is of "public concern," the plaintiff must prove "knowing or reckless falsehood." *Id.* (citations omitted). Applying these standards to § 3344, the *Eastwood* court concluded "that Civil Code section 3344, subdivision (d), as it pertains to news, does not provide an exemption [from liability for commercial misappropriation] for a knowing or reckless falsehood." *Id.* at 425, 198 Cal. Rptr. 342.

The court went on to rule that Eastwood was required to, but failed to, allege that the article "was published with knowledge or in reckless disregard of its falsity." *Id.* at 426, 198 Cal.Rptr. 342. Therefore, Eastwood failed to state a cause of action for either common law or statutory infringement of his right of publicity. *Id.* The court permitted Eastwood leave to amend his complaint to cure the defect. *Id.*

■ *Eastwood* makes clear that a public figure who is the target of "news" or material of public concern may state a claim under California's right of publicity statute only if he or she alleges that the defendant published the news with knowledge of its falsity or in reckless disregard of its truth. *Accord Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1188 (9th Cir.2001) (reversing judgment after bench trial in favor of public figure Dustin Hoffman because the evidence did not demonstrate by clear and convincing evidence that the media defendant acted with "actual malice," that is, an intent to mislead readers that they were seeing Hoffman's body in an altered photograph of him); *Dora*, 15 Cal. App.4th at 544, 18 Cal.Rptr.2d 790 (affirming grant of summary judgment on commercial misappropriation claim to documentarian who used interview of public figure because such publication "is constitutionally protected in the absence of a showing that the publishers knew that their statements were false or published them in reckless disregard of the truth").

*Cher v. Forum International, Ltd.*, 692 F.2d 634 (9th Cir.1982) is also instructive. There, the celebrity Cher was interviewed by a talk show host in connection with a planned cover story on her in *Us* Magazine. Cher changed her mind, however, and paid *Us* to refrain from using the interview. The interviewer then sold the interview to the publishers of *Star*, a tabloid, and *Forum*, a magazine. In advertising that it was publishing the interview, *Forum* (falsely) proclaimed on its cover that Cher "tells *Forum*" things that she "would never tell *Us*." *Id.* at 639. Cher sued, alleging that her reputation was "degraded by the suggestion that she would give an exclusive interview to [those] publication[s]." *Id.* at 637.

The Ninth Circuit held that the (truthful) publication of the interview in *Forum* was protected by the First Amendment. The court then stated that "Constitutional protection extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the protected publication and promotes only the protected publication." *Id.* at 639 (citation omitted). In other words, if a defendant publishes material that is protect-

ed by the First Amendment, he or she cannot be liable for truthful advertisements of the material. However, the Ninth Circuit also went on to hold that the publisher may be liable if he or she knowingly or recklessly "falsely claim[s] that the public figure endorses that news medium." *Id.* The court found that knowing or reckless false claims of endorsement can be either explicit or implicit. *Id.* at 639–40. Applying these standards, the court upheld the judgment against *Forum* because it had knowingly falsely implied that Cher endorsed its use of the interview. *Id.* at 640.

### 2. Application of Legal Standards

■ As a preliminary matter, Plaintiffs have argued that Defendants' speech—both the book itself and the advertising material promoting it—is entitled to less protection under the First Amendment because it is "commercial speech." Plaintiffs are incorrect, at least for purposes of a commercial misappropriation claim: this is not commercial speech. " 'Commercial speech' has special meaning in the First Amendment context. Although the boundary between commercial and noncommercial speech has yet to be clearly delineated, the 'core notion of commercial speech' is that it 'does no more than propose a commercial transaction.' " *Hoffman,* 255 F.3d at 1184 (quoting *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983)).

*The Market Gurus* is a book that analyzes the investment strategies of well-known financial analysts and stock pickers. It does not "propose a commercial transaction" and is therefore not commercial speech. Because it is not commercial speech, the book is entitled to the full panoply of First Amendment protections. *Hoffman,* 255 F.3d at 1185–86 (speech at issue not "commercial speech," and therefore entitled to full First Amendment protection); *cf. Downing v. Abercrombie &*

*Fitch,* 265 F.3d 994, 1002 & n. 2 (9th Cir.2001) (Abercrombie's catalog, which used the plaintiff's photograph without permission to promote its clothing, was "commercial in nature and, therefore, not entitled to the full First Amendment protection").

■ Moreover, even though the advertising promoting *The Market Gurus* proposes that the target of the advertising buy the book, and in that sense proposes a commercial transaction, *Cher* makes clear that, to the extent this advertising is "merely an adjunct of the protected publication and promotes only the protected publication," it is entitled to First Amendment protection to the same extent as the underlying publication. *Cher,* 692 F.2d at 639; *accord Montana v. San Jose Mercury,* 34 Cal.App.4th 790, 796, 40 Cal.Rptr.2d 639 (1995) (newspaper had a right to advertise itself by republishing a front page sports story that featured celebrity Joe Montana because underlying story was protected by First Amendment); *New Kids on the Block v. News America Publishing, Inc., et al.,* 745 F.Supp. 1540, 1546 (C.D.Cal.1990) ("California courts have specifically allowed incidental commercial exploitation of a public figure's name and likeness in the context of a publication's advertising activities.") (citing *Guglielmi v. Spelling–Goldberg Productions,* 25 Cal.3d 860, 873, 160 Cal.Rptr. 352, 603 P.2d 454 (1969)). Therefore, because the book cover, flyleaf, and other material advertising *The Market Gurus* is "an adjunct" of *The Market Gurus,* it is protected to the same extent as the book itself.

■ It is undisputed that O'Neil is a public figure. The Court also finds that *The Market Gurus* involves matters of public concern. As Dearborn argues, "[t]here is extraordinary interest in the financial world and in the stock market. Indeed, there are wire services, newspa-

pers, television stations, websites and radio stations devoted solely to speaking information regarding the stock market and strategies for investing in the stock market." Opposition to Motion for Preliminary Injunction at 21. By his own admission, O'Neil is a leader in the field of financial analysis. His insights into investment strategy are therefore no less a matter of public concern than the insights of leading philosophers or scientists into their respective fields. As such, *The Market Gurus* falls within the "news" exception to infringement of the right of publicity. *Eastwood,* 149 Cal.App.3d at 421, 198 Cal. Rptr. 342; *see also Keimer v. Buena Vista Books, Inc.,* 75 Cal.App.4th 1220, 1229–20, 89 Cal.Rptr.2d 781 (1999) ("It is true, of course, that the subject matter of the books [at issue]—achieving economic security by investing—is of interest to the general public.").

Because *The Market Gurus* is not commercial speech, and because it involves matters of public concern, Plaintiffs' complaint can only be sustained if it alleges that Dearborn acted with "actual malice" in publishing it. That is, Plaintiffs must allege that Dearborn published the book with knowledge that it contains false statements of fact, or with reckless disregard for the truth. *Eastwood,* 149 Cal.App.3d at 425–26, 198 Cal.Rptr. 342. Alternatively, under *Cher,* Plaintiffs' complaint may be sustained if it alleges that in its advertising Dearborn knowingly or recklessly falsely claimed that O'Neil endorses *The Market Gurus.*

Plaintiffs' complaint alleges that *The Market Gurus* contains "errors, misstatements and mischaracterizations. For example, the charts in 'The Market Gurus' book omit information vital to a proper application of Plaintiffs' method. The charts also appear to weigh various factors differently than do Plaintiffs. Furthermore, 'The Market Gurus' book states the result for an individual stock in terms of 'pass' or 'fail' whereas Plaintiffs do not condone the issuance of such strong recommendations to buy or sell a particular stock" Complaint ¶ 14. As a result, Plaintiffs allege, "Defendants are misapplying Plaintiffs' methods to incomplete and outdated information to produce recommendations stronger than those Plaintiffs would issue even after a proper application of Plaintiffs' method to complete and up-to-date information." Complaint ¶ 15. The complaint also alleges that Defendants have placed O'Neil's name on the cover of *The Market Gurus* "in a way that is likely to cause confusion and create the false impression that Plaintiffs authorized and/or contributed to 'The Market Gurus' book." Complaint ¶ 12.

None of these allegations claims that Dearborn possessed the requisite scienter, that is, that it knowingly or recklessly published false statements, or that it knowingly or recklessly falsely claimed that O'Neil endorsed the book. The complaint does allege that *The Market Gurus* contains "errors, misstatements and mischaracterizations," and also alleges that it creates the false impression that O'Neil endorsed the book. But *Eastwood* makes clear that these allegations standing alone are insufficient to be actionable under § 3344, Accordingly, the Court GRANTS Dearborn's motion to dismiss with leave to amend.

## C. *Unfair Competition*

■ The First Amendment standards governing claims brought under Cal.Bus. & Prof.Code § 17200, *et seq.,* are slightly different than those governing commercial misappropriation. *Keimer,* 75 Cal.App.4th at 1232, 89 Cal.Rptr.2d 781 (1999) (distinguishing commercial misappropriation claims from false advertising claims even when both are based on advertisements of

a protected publication, on the ground that in the former action the right of publicity "has not been held to outweigh the value of free expression" while in the latter cases in certain circumstances "the right of California consumers to be free from deceptive or misleading advertising has been held ... to outweigh the unfettered right to free expression").

As a preliminary matter, Dearborn is correct that Plaintiffs cannot premise a § 17200 claim on the contents of *The Market Gurus. Keimer*, 75 Cal.App.4th at 1231, 89 Cal.Rptr.2d 781 ("The [Unfair Business Practices Act] does not seek to restrict noncommercial speech in any manner. It is tailored to protect the public from false commercial speech, a category of speech which has been held to be more durable, verifiable and of a lower social value than fully protected noncommercial speech."). Rather, *Keimer* makes clear that only false or misleading advertising of *The Market Gurus* could be the target of a § 17200 claim. As Defendants argue, an opposite conclusion would set a dangerous precedent: "If, as Plaintiffs suggest, editorial speech can form the basis for a Section 17200 claim simply because there was a factual error, then the publication of *any* work of nonfiction—including articles in magazines, newspapers, works of literary criticism or financial analysis—would expose a publisher to liability for unfair competition any time there is a factual error, defamatory or not." Def.'s Reply to Motion to Dismiss at 4.

Expanding § 17200 liability to factual errors contained in a book would also contravene Ninth Circuit cases holding that the First Amendment precludes imposing liability on the publisher for factual inaccuracies contained in a book, because a book publisher does not have a duty to investigate the accuracy of the contents of the books it publishes. *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1036–37 (9th Cir.1991) ("We conclude that the defendants have no duty to investigate the accuracy of the contents of the books it publishes. A publisher may of course assume such a burden, but there is nothing inherent in the role of publisher or the surrounding legal doctrines to suggest that such a duty should be imposed on publishers. Indeed the cases uniformly refuse to impose such a duty. Were we tempted to create this duty, the gentle tug of the First Amendment and the values embodied therein would remind us of the social costs."); *Barden v. Harpercollins Publishers, Inc.*, 863 F.Supp. 41, 45 (D.Mass.1994). Therefore, to the extent that Plaintiff's complaint alleges that Dearborn violated § 17200 based on the contents of *The Market Gurus*, it is dismissed with prejudice.[3]

Can Plaintiffs nevertheless state a § 17200 claim based on Dearborn's advertising of the book? *Keimer* held that, for purposes of a § 17200 claim, a book jacket and a videotape cover constituted commercial speech. *Keimer*, 75 Cal.App.4th at 1230, 89 Cal.Rptr.2d 781. *But see Lacoff v. Buena Vista Publishing, Inc.*, 183 Misc.2d 600, 705 N.Y.S.2d 183 (2000) (holding that exact same speech at issue in *Keimer*—the book cover, flyleaf and introduction to the book which stated a fact made by the authors in the book itself—was not commercial speech because it "states a fact made by the authors in the text; it is not about the Book as a product"). Unlike *Keimer*, *Cher* and cases that follow it hold that, for purposes of a right of publicity claim, an advertisement that is "merely an adjunct" of the fully-protected publication—such as the cover of a maga-

---

**3.** Plaintiffs' complaint contains allegations that Defendants have misappropriated O'Neil's "proprietary" methods but there are no claims for copyright or trademark infringement.

zine or a poster sold for profit that reproduces a photo from a newspaper story—is entitled to First Amendment protection to the same extent as the underlying publication. *Cher*, 692 F.2d at 639; *Montana*, 34 Cal.App.4th at 796, 40 Cal.Rptr.2d 639; *New Kids on the Block*, 745 F.Supp. at 1545 (citing *Guglielmi*, 25 Cal.3d at 873, 160 Cal.Rptr. 352, 603 P.2d 454).

For purposes of Dearborn's motion, the only practical difference between whether the statements on the book cover and flyleaf are commercial or non-commercial speech relates to scienter: If the speech is commercial, Plaintiffs need only allege that Dearborn knew or should have known that the statements made on the cover or flyleaf were false or misleading. *Keimer*, 75 Cal.App.4th at 1232, 89 Cal.Rptr.2d 781 ("The Unfair Trade Practices Act imposes liability upon an advertiser for untrue or misleading statements which the advertiser, in the exercise of reasonable care, should have known were false.") (citing Cal.Bus. & Prof.Code § 17500). If the speech is not commercial, they must allege knowing falsity (or reckless disregard of the truth), and cannot succeed merely by alleging negligence. In both instances, however, Plaintiffs must allege that some statements on the cover or flyleaf are false or misleading.

The Court declines to resolve at this time whether the speech on the book cover and flyleaf is commercial or non-commercial. Tension in the case law aside, Plaintiffs do not precisely identify in their complaint which statements on the *The Market Gurus* cover or flyleaf are supposedly false or misleading. Instead, the complaint (which is not a model of clarity) appears to premise Plaintiffs' § 17200 claim solely on the contents of *The Market Gurus*. As stated above, this is not actionable. Therefore, if Plaintiffs elect to amend their § 17200 claim, they shall identify the precise statements on the cover and flyleaf

that they allege are false or misleading. Plaintiffs' amended complaint shall also allege the state of mind that Dearborn possessed when it made these statements.

For the reasons stated above, Plaintiffs' unfair competition claim is DISMISSED with leave to amend.

## IV.

### CONCLUSION

Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE; however, to the extent it premises its § 17200 claim on the contents of *The Market Gurus*, it is dismissed with prejudice. If Plaintiffs elect to amend their complaint, they must do so by not later than twenty-one days from the date of this Order. If Plaintiffs do not file an amended complaint by that date, the dismissal shall be with prejudice. Because the Court is dismissing Plaintiffs' complaint, Plaintiffs' motion for preliminary injunction is DENIED WITHOUT PREJUDICE. If Plaintiffs file an amended complaint, they may renew their motion for preliminary injunction at that time.

IT IS SO ORDERED.