[No. B228051. Second Dist., Div. Four. Aug. 23, 2011.]

AROA MARKETING, INC., Plaintiff and Appellant, v.
HARTFORD INSURANCE COMPANY OF THE MIDWEST, Defendant
and Respondent.

## COUNSEL

Law Office of John J. Perlstein and John J. Perlstein for Plaintiff and Appellant.

Mendes & Mount, Dean B. Herman and Catherine L. Rivard for Defendant and Respondent.

## OPINION

MANELLA, J.—

### INTRODUCTION

Aroa Marketing, Inc. (Aroa), appeals from an order sustaining a demurrer without leave to amend its complaint against respondent Hartford Insurance Company of the Midwest (Hartford). In the complaint, Aroa alleged that Hartford had breached its duty to defend or indemnify Aroa in an underlying lawsuit, *Radcliffe v. Aroa Marketing, Inc.* (Super. Ct. L.A. County, 2008, No. 390531) (Radcliffe lawsuit). The trial court interpreted an insurance contract provision that specifically excluded coverage for "personal and advertising injury" arising out of "any violation of any intellectual property rights" as precluding coverage for the Radcliffe lawsuit. We affirm.[1]

### FACTUAL AND PROCEDURAL HISTORY

#### A. *Insurance Policy*

Hartford had issued a commercial general liability insurance policy to Aroa for the policy period September 9, 2006, to November 1, 2007. The policy covered any damages that Aroa became legally obligated to pay because of "bodily injury," "property damage" or "personal and advertising injury"

---

[1] Aroa also appealed from an order granting the demurrer to its complaint against its former insurance broker, Richard O. Tyler. On April 11, 2011, this court dismissed that appeal pursuant to a stipulation between Aroa and Tyler.

arising out of Aroa's business. "Personal and advertising injury" was defined to include " 'oral or written or electronic publication of material that violates a person's right of privacy.' " Coverage was excluded, however, for "personal and advertising injury" arising out of " 'any violation of any intellectual property rights, such as copyright, patent, trademark, trade name, trade secret, service mark, or other destination of origin or authenticity.' "

## B.  *Underlying Lawsuit*

While the Hartford policy was in effect, Aroa hired a model named Tara Radcliffe to film an exercise video for Aroa's business. According to Radcliffe's complaint, the video was to be used at the consumer electronics show (CES) held in January 2007 and on CES's Internet site. However, Aroa allegedly also used Radcliffe's "image and likeness to sell and market . . . products, including products unrelated to the exercise equipment featured in the [v]ideo, through medi[a] other than CES and its internet site." Upon discovering Aroa's use of her image and likeness in media not named in the written contract, Radcliffe "repeatedly requested that she be compensated for said use." Aroa failed to pay Radcliffe and continued the unauthorized use. In response, Radcliffe sued Aroa for using her "likeness to sell and market products beyond that which was allowed under the contract." She asserted causes of action for "statutory and common law misappropriation of likeness, breach of contract, unjust enrichment and unfair competition." According to Radcliffe, Aroa's actions directly injured her "in that her image and likeness was, and still is [*sic*], being associated with and taken as an endorsement of the AROA brand and its products such that it diminished her marketability and publicity value as a professional actor and model." She also claimed that as a direct and legal result of Aroa's activities, she was "deprived of her right to publicity."

Aroa requested that Hartford defend and indemnify it against the Radcliffe lawsuit, but Hartford declined in an August 26, 2009 disclaimer of coverage letter. According to Hartford, "[i]t is well settled under California law, both statutory and common law, that, while the right of publicity is derivative from a right of privacy, it is clearly considered an intellectual property right which is specifically excluded from coverage under the Policy." Aroa eventually settled the Radcliffe lawsuit.

## C.  *Coverage Lawsuit*

On May 20, 2010, Aroa filed its first amended complaint (FAC) against Hartford alleging that Hartford had breached its duty to defend and indemnify Aroa against the Radcliffe lawsuit. Hartford filed a demurrer to the FAC. It asserted the causes of action in the Radcliffe lawsuit did not fall within the

scope of the insurance policy's coverage as Radcliffe claimed a violation of her right to publicity and a "right of publicity" claim is not a "right of privacy" claim. Additionally, Hartford argued the causes of action were excluded by the policy's intellectual property rights exclusion.[2]

The parties filed additional pleadings and the trial court held a hearing on August 16, 2010. On September 2, 2010, the trial court issued an order sustaining the demurrer without leave to amend. Aroa filed a timely notice of appeal.

## DISCUSSION

■ Under California law, "an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "[I]f, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655 [31 Cal.Rptr.3d 147, 115 P.3d 460].) An insurer is also obligated to provide a defense where an exclusion arguably applies but may reasonably be interpreted to be inapplicable to the alleged facts. (*Smith Kandal Real Estate v. Continental Casualty Co.* (1998) 67 Cal.App.4th 406, 418 [79 Cal.Rptr.2d 52].)

On appeal, Aroa contends the trial court erred in sustaining the demurrer to its FAC because the statutory and common law misappropriation of likeness claims in the Radcliffe lawsuit fall within the scope of the insurance policy's coverage for right to privacy claims. It further contends that the exclusion for privacy claims arising out of intellectual property rights was inapplicable. Finally, it contends the trial court abused its discretion in denying leave to amend the FAC. We address each contention in turn. We review the order sustaining the demurrer de novo, and we review the court's denial of leave to amend for an abuse of discretion. (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 166 [104 Cal.Rptr.3d 319].)

### A. Coverage Provision

■ " 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' "

---

[2] Aroa amended its complaint to remove certain allegations related to Tyler and one factual allegation related to Hartford. Hartford's demurrer to the FAC was substantially identical to its demurrer to Aroa's original complaint, except with additional legal analysis.

(*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568] (*Palmer*).) "Accordingly, in interpreting an insurance policy, we seek to discern the mutual intention of the parties and, where possible, to infer this intent from the terms of the policy." (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204 [13 Cal.Rptr.3d 68, 89 P.3d 381].) ■ "When interpreting a policy provision, we must give its terms their ' "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." ' [Citation.] We must also interpret these terms 'in context' [citation], and give effect 'to every part' of the policy with 'each clause helping to interpret the other.' " (*Palmer, supra,* 21 Cal.4th at p. 1115.) ■ Moreover, coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648 [3 Cal.Rptr.3d 228, 73 P.3d 1205].)

Here, the insurance policy provided that it would cover damages for " '[p]ersonal and advertising injury' " arising out of "[o]ral, written or electronic publication of material that violates a person's right of privacy." Aroa contends the misappropriation of likeness claims asserted in the Radcliffe lawsuit fall within the broader category of claims asserting a right of privacy and are thus covered under its insurance contract with Hartford. Hartford contends Radcliffe's claims are distinct from any right of privacy and thus fall outside the scope of coverage. On this preliminary issue, California law supports Aroa.

■ In *Comedy III Productions, Inc. v. Gary Saderup, Inc.* (2001) 25 Cal.4th 387 [106 Cal.Rptr.2d 126, 21 P.3d 797] (*Comedy III Productions*), the California Supreme Court noted that the common law right of publicity derived from the law of privacy, and "[s]pecifically, from the fourth type of privacy invasion identified by Dean Prosser in his seminal article on the subject." (*Id.* at p. 391, fn. 2.) "The 'four distinct torts identified by Dean Prosser and grouped under the privacy rubric are: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.' " (*KNB Enterprises v. Matthews* (2000) 78 Cal.App.4th 362, 366 [92 Cal.Rptr.2d 713] (*KNB Enterprises*).) As in *KNB Enterprises*, Radcliffe's action concerned the fourth category of privacy torts, "appropriation for the defendant's advantage of the model['s] [likeness], which is also referred to as the right of publicity." (*Ibid.*) Thus, Radcliffe's claims were right of publicity claims, and such claims have been identified as falling within the rubric of right of privacy claims.

■ Hartford contends, however, that California courts have recognized that the right of publicity is distinct from the right of privacy. (See, e.g., *KNB Enterprises, supra,* 78 Cal.App.4th at p. 366 ["The right of publicity has come to be recognized as distinct from the right of privacy."].) It suggests that when courts have grouped right of publicity claims with privacy right claims, they were doing so merely as a matter of historical background. Regardless, Hartford cites no California case rejecting this historical grouping. Even the court in *KNB Enterprises* noted that "[t]he right to prevent others from appropriating one's [likeness] for commercial gain has evolved from the common law right of privacy." (*Ibid.*) Because coverage provisions are to be interpreted broadly, and California courts continue to treat right of publicity claims as a subset of privacy claims, we conclude that *in the absence of an exclusion,* the claims asserted in the Radcliffe lawsuit fell within the insurance policy's coverage for right of privacy claims.

## B. *Exclusion provision*

■ Hartford contends the intellectual property rights exclusion applies in this case. The insurance policy at issue excluded coverage for " '[p]ersonal and advertising injury' " arising out of "any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." "The right of publicity, like copyright, protects a form of intellectual property that society deems to have some social utility." (*Comedy III Productions, supra,* 25 Cal.4th at p. 399; see also Black's Law Dict. (8th ed. 2004) p. 824 ["intellectual property" defined to include "publicity rights"].) Thus, the right of publicity is an intellectual property right, and right of publicity claims would be excluded from coverage under the intellectual property rights exclusion.

■ Aroa contends the intellectual property rights exclusion does not apply to right of publicity claims because the right of publicity is not specifically listed in the exclusion. We disagree. The exclusion applies when the injury arises out of "any violation of any intellectual property rights." Even if this language is interpreted narrowly against the insurer, it clearly applies to bar claims based on the right of publicity, as that right has been held to be an intellectual property right. Furthermore, the fact that the right of publicity is not specifically listed after the phrase "any intellectual property rights" does not suggest the exclusion does not apply. The exclusion provides that intellectual property rights are those "such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity." Thus, by its terms, the list is expressly nonexclusive. (Cf. *Shaddox v. Bertani* (2003) 110 Cal.App.4th 1406, 1414 [2 Cal.Rptr.3d 808] [in statutory construction, " '[t]he phrase "such as" is not a phrase of strict limitation, but is a phrase of general similitude indicating that there are

includable other matters of the same kind which are not specifically enumerated.' [Citation.]"].) Moreover, to the extent Radcliffe is claiming use of her likeness constituted an endorsement, that too falls within the category of intellectual property claims listed in the exclusion, such as trademark. (See *Waits v. Frito-Lay, Inc.* (9th Cir. 1992) 978 F.2d 1093, 1110 ■ [false endorsement claim based on the unauthorized use of a celebrity's identity alleges misuse of trademark].)

■ Finally, Aroa contends Radcliffe's common law misappropriation of likeness claim implicates more than her right of publicity. Specifically, Aroa contends that the claim was, or could have been, based upon an injury to Radcliffe's feelings or her peace of mind. (See *Dora v. Frontline Video, Inc.* (1993) 15 Cal.App.4th 536, 542 [18 Cal.Rptr.2d 790] (*Dora*) [common law misappropriation has two aspects: one is the right of publicity and the other is "the appropriation of the name and likeness that brings injury to the feelings, that concerns one's own peace of mind, and that is mental and subjective"].)
■ After reviewing the Radcliffe complaint, we conclude Radcliffe did not seek damages for misappropriation that injured her feelings. Unlike the plaintiff in *Dora*, Radcliffe did not assert that she " 'wish[ed] to be left alone.' " (*Ibid.*) Rather, she sought compensation for the unauthorized use of her likeness, and she filed the lawsuit only after Aroa refused to pay her for such use. Additionally, in alleging her common law misappropriation of likeness claim, Radcliffe repeated her allegations that Aroa diminished her marketability and publicity value and deprived her of her right of publicity. Thus, her common law misappropriation claim was a right of publicity claim. Under the intellectual property rights exclusion, that claim is precluded from coverage under the insurance policy. Accordingly, the trial court did not err in sustaining the demurrer to the FAC.

## C. *Leave to Amend*

We further conclude the trial court did not err in denying Aroa leave to amend the FAC. The Radcliffe lawsuit was based upon a violation of Radcliffe's right of publicity. The insurance policy excludes claims arising from any violation of any intellectual property right. The California Supreme Court has held that the right of publicity is an intellectual property right, and it reached this holding several years before Aroa purchased the insurance policy at issue. On this record, there is no reasonable possibility that Aroa can amend the complaint to allege the necessary facts to state a valid cause of action against Hartford for failure to defend or indemnify it in the Radcliffe

lawsuit. Accordingly, the trial court did not abuse its discretion in denying Aroa leave to amend the FAC.[3]

## DISPOSITION

The superior court's order is affirmed. Costs are awarded to respondent.

Epstein, P. J., and Suzukawa, J., concurred.

On August 25, 2011, the opinion was modified to read as printed above.

---

[3] Our ruling is supported by the fact that Aroa had an opportunity to amend its complaint after being apprised of Hartford's arguments in support of a demurrer. That the FAC contains no new allegations sufficient to support a cause of action against Hartford suggests that Aroa cannot plead any such allegation.