[No. B179868. Second Dist., Div. Three. Mar. 27, 2006.]

ANTE MARIJANOVIC et al., Plaintiffs and Respondents, v. GRAY, YORK & DUFFY, Defendant and Appellant.

[No. B182058. Second Dist., Div. Three. Mar. 27, 2006.]

ANTE MARIJANOVIC et al., Plaintiffs and Respondents, v. R. C. SEHNERT, INC., et al., Defendants and Appellants.

COUNSEL

Flahavan Law Offices and William F. Flahavan for Defendant and Appellant Gray, York & Duffy.

Maxie Rheinheimer Stephens & Vrevich and Darin L. Wessel for Defendants and Appellants R.C. Sehnert, Inc., and Ron Sehnert.

Cameron, Pearlson & Foster and Richard J. Foster for Plaintiffs and Respondents.

OPINION

**CROSKEY, J.**—A general contractor was sued by a condominium owners association for latent defects in the construction of the condominium complex. The general contractor cross-complained against the painting subcontractor for indemnity. Ultimately, the entire action settled without contribution from the painter, and the painter was voluntarily dismissed without prejudice. The painter then brought the instant malicious prosecution action against the general contractor and its counsel.

The general contractor and its counsel each filed anti-SLAPP (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16) motions, which were denied on the basis that the painter had established a prima facie case of malicious prosecution. We disagree, concluding the evidence presented on the anti-SLAPP motions fails to establish an absence of probable cause to bring the underlying cross-complaint against the painter. That painter's counsel had represented to the general contractor's counsel that the painter was not liable for the defects alleged is insufficient, as a matter of law, to establish a lack of probable cause to pursue the cross-complaint. Similarly, the fact that the painter introduced his own declaration of nonliability in opposition to the anti-SLAPP motion is also insufficient. The general contractor and its counsel possessed evidence that painter was liable; that painter may not, in fact, have been liable cannot defeat probable cause.

### FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are set forth in the complaint in the instant action, and the exhibits thereto. On March 12, 1999, Oakridge Condominium Association (Condominium) brought suit against its builder/developer for latent defects in

the construction of the complex. Construction had been completed, and a notice of completion filed, in 1990. Condominium's complaint alleged numerous latent defects, including that "water-exposed exterior surfaces . . . including . . . walls, . . . decks, [and] patios . . . have failed, thereby allowing ponding and water entry into the walls and common areas, and causing damage . . . ."

At some point, the general contractor on the Condominium complex, R.C. Sehnert, Inc. (General Contractor[1]), was named as a defendant by Condominium.

On July 3, 2001, General Contractor filed a cross-complaint against several subcontractors who had worked on the Condominium complex. At this point, General Contractor was represented solely by Maxie Rheinheimer Stephens & Vrevich, LLP (General Contractor's First Attorney). On September 7, 2001, General Contractor amended its cross-complaint to name the painter on the project, Ante Marijanovic, also known as Tony Marijanovic, doing business as Tony's Painting (Painter), as a previously-named Roe cross-defendant. By this point, a second law firm, Gray, York & Duffy, LLP (General Contractor's Second Attorney) had been associated in to assist in General Contractor's representation. On January 23, 2002, Painter answered the cross-complaint with a general denial.

On February 26, 2002, Attorney Richard J. Foster (Painter's Counsel) wrote a letter on behalf of Painter to General Contractor's Second Attorney. The letter stated, in pertinent part: "I have reviewed the defect report, and there is absolutely no basis to maintain this lawsuit against [Painter]. The only reference to painting is a reference to chipped paint on the wood trim. As you know, the paint was applied eleven years prior to the report. Paint is not expected to last that long; wood is normally repainted every five years. Thus, this is no reason to subject my client to the expense of this litigation. [Painter] does not have insurance coverage for this claim. As a result, this lawsuit is a hardship. We respectfully request that you voluntarily dismiss [Painter]."

On February 27, 2002, General Contractor's Second Attorney responded as follows: "While I am sympathetic to your client's uninsured status, there are issues raised by [Condominium] which preclude dismissal. I do not know if you attended the site inspection on January 30, 2002, or the defect presentation

---

[1] We use "General Contractor" to refer collectively to R. C. Sehnert, Inc., and Ron Sehnert, its officer and controlling shareholder.

on February 7, 2002, but these two events made it clear that [Condominium] is claiming serious problems with the exterior finishes at this project. Certainly there are other parties who bear potential liability as well as your client. Additionally, lack of maintenance and upkeep are valid defenses for all of us. However, the allegations regarding painting seem to go beyond normal wear and tear, and directly to the original workmanship. [Condominium] alleges that, in connection with the horizontal siding, there was no painting or sealing of cut edges, and no back-priming. Wood trim and privacy fences, likewise, were not back primed. These inadequacies have contributed to the overall deterioration of the exterior surfaces, dry rot, split wood, water intrusion, etc. [¶] Based on the allegations, I am not in a position to dismiss [Painter]."

On March 8, 2002, Condominium created a "Preliminary Defect List and Cost of Repair Estimate." Condominium's expert attached a cost number to each defect category. General Contractor retained its own expert to allocate responsibility for those expenses among the different trades (and subcontractors) involved in the construction of the Condominium complex. On July 3, 2002, General Contractor's Second Counsel wrote Painter's Counsel, conveying a settlement demand in excess of $100,000, based on General Contractor's expert's allocation (the relevant portion of which was attached to the letter).

Ultimately, the Condominium's suit was settled without a contribution from Painter. Nonetheless, General Contractor voluntarily dismissed its entire cross-complaint, with prejudice, on June 18, 2003.

On March 1, 2004, Painter brought the instant malicious prosecution action against General Contractor, General Contractor's First Attorney, and General Contractor's Second Attorney. Painter alleged malicious prosecution in both the initiation and the maintenance of General Contractor's cross-action against him.

General Contractor's First Attorney filed an anti-SLAPP motion, arguing that a malicious prosecution action is the proper subject of an anti-SLAPP motion, and that Painter would be unable to establish a prima facie case of malicious prosecution. Specifically, General Contractor's First Attorney argued that Painter would be unable to establish General Contractor's First Attorney lacked probable cause or acted with malice. Indeed, General Contractor's First Attorney took the position that Painter's complaint and the exhibits thereto *established* probable cause as a matter of law, in that they established that Painter was the painting subcontractor on the Condominium complex, and that Condominium had made allegations against General Contractor "relating to the painting work."

Painter opposed the anti-SLAPP motion by arguing that his job on the Condominium complex had been restricted to painting the exterior surfaces; he had no obligation to waterproof or back prime any surface. Painter's opposition argued General Contractor's First Attorney "knows these facts are true." Yet, painter provided no evidence that General Contractor's First Attorney knew this at the time it pursued the cross-complaint against Painter. The only evidence submitted in opposition to the anti-SLAPP motion was a declaration from Painter's Counsel stating that he made that representation to General Contractor's attorneys. Painter's Counsel stated, "On numerous occasions, I complained to [General Contractor's] attorneys that [Painter] merely painted exposed surfaces eleven years before the cross-complaint was filed. I further explained that [Painter] was not responsible for installing any of the 'systems' which the [Condominium] alleged were defective. [General Contractor's] attorneys first argued that they filed the cross-complaint against [Painter] because the complaint in the [Condominium's action] alleged defective 'watertight systems[.'] I explained that [Painter] did not install any of those systems and that he wasn't responsible for any waterproofing or back priming." Painter's Counsel also represented that General Contractor's attorneys had relied on certain alleged defects identified in Condominium's defect report in order to keep Painter in the action, but that Painter's Counsel had repeatedly informed them that Painter was not responsible for those defects.

A hearing on the motion was held on August 10, 2004. At the hearing, Painter's Counsel conceded that it had been appropriate to *initiate* suit against Painter, but argued there was no probable cause to *maintain* the suit. When a question was raised as to the sufficiency of Painter's Counsel's declaration to defeat the anti-SLAPP motion, Painter's Counsel argued that his declaration was sufficient because he was the one who informed General Contractor's attorneys that Painter had not been responsible for the defects.[2] The trial court granted General Contractor's First Attorney's anti-SLAPP motion, concluding that Painter's malicious prosecution complaint, on its face, established the existence of probable cause for General Contractor's cross-complaint against Painter. Painter did not appeal the grant of General Contractor's First Attorney's anti-SLAPP motion.

On September 8, 2004, General Contractor's Second Attorney filed an anti-SLAPP motion, on the same basis as General Contractor's First Attorney's motion.[3] In opposition, Painter relied on his counsel's declaration. In addition, he filed his own declaration, in which he stated, "I was under

[2] Painter's Counsel stated, "I was one of the players there. I'm the one reciting these actual conversations. It's not hearsay. It goes to their state of mind. We went over it in detail, and my guy was not responsible for any of those systems."

[3] As the time to appeal the order granting General Contractor's First Attorney's anti-SLAPP motion had not yet run, General Contractor's Second Attorney did not argue that order had any

contract with [General Contractor] to paint exposed surfaces at the Project. I was not contracted for any waterproofing or back priming." Painter further declared that he had no responsibility for any of the defects alleged in the Condominium's complaint or defect report.

The trial court denied General Contractor's Second Attorney's motion. As to the dispositive issue of whether General Contractor's Second Attorney had probable cause to initiate and maintain the action against Painter, the trial court stated that Painter was pursued as a cross-defendant even after discovery revealed that he could not have caused any of the defects alleged by the Condominium. General Contractor's Second Attorney filed a timely notice of appeal.

After successfully defeating General Contractor's Second Attorney's anti-SLAPP motion, Painter served General Contractor with the complaint in the malicious prosecution action. General Contractor brought an anti-SLAPP motion. Painter's opposition relied on the same two declarations as his opposition to General Contractor's Second Attorney's anti-SLAPP motion. The trial court denied the anti-SLAPP motion, stating it would not reconsider the ruling it had made on General Contractor's Second Attorney's motion. General Contractor filed a timely notice of appeal.

We have consolidated the two cases on appeal.

## CONTENTIONS OF THE PARTIES

On appeal, General Contractor and General Contractor's Second Attorney (collectively, Contractor Appellants) argue the trial court erred in that Painter failed to establish a prima facie case of malicious prosecution, specifically with respect to the element of lack of probable cause. Additionally, they argue the favorable ruling on General Contractor's *First Attorney*'s anti-SLAPP motion should be given preclusive effect. We need not reach the second issue, as Contractor Appellants are correct on the first.

## DISCUSSION

1. *Process Governing an Anti-SLAPP Motion*

Code of Civil Procedure section 425.16 " 'is designed to protect citizens in the exercise of their First Amendment constitutional rights of free speech and petition. It is California's response to the problems created by

collateral estoppel effect. However, General Contractor's Second Attorney argued that the court had already decided the issue presented by its motion.

meritless lawsuits brought to harass those who have exercised these rights.' " (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].) A defendant against whom a SLAPP suit has been brought may file a special motion to strike, which will result in the complaint's dismissal unless the plaintiff can establish a probability of prevailing on the claim. (Code Civ. Proc., § 425.16, subd. (b).)

Adjudication of an anti-SLAPP motion involves a two-part process. First, the moving party bears the burden of establishing a prima facie showing that the plaintiff's cause of action does, in fact, arise from the defendant's free speech or petition activity. Second, if the moving defendant meets that burden then the burden shifts to the plaintiff to establish a probability of prevailing. In order to establish such probability the plaintiff is required to make a prima facie showing of facts which would, if proven at trial, support a judgment in plaintiff's favor. (*Kyle v. Carmon, supra,* 71 Cal.App.4th at p. 907.) "The burden on the plaintiff is similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment." (*Ibid.*)

On appeal, we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant made its threshold showing the action was a SLAPP suit and whether the plaintiff established a probability of prevailing. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056 [18 Cal.Rptr.3d 882].) "In doing so, we consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Id.* at pp. 1056–1057.) We do not weigh the credibility of the evidence or its comparative probative strength. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768 [131 Cal.Rptr.2d 201].)

■ It is not disputed that the Contractor Appellants established their initial burden. A malicious prosecution action is a proper basis for an anti-SLAPP motion. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212–213 [12 Cal.Rptr.3d 786].) We therefore consider whether Painter established a probability of prevailing on his malicious prosecution action.

### 2. *Malicious Prosecution*

■ "In every case, in order to establish a cause of action for malicious prosecution a plaintiff must plead and prove that the prior proceeding, commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought

without probable cause; and (3) initiated with malice." (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335 [6 Cal.Rptr.2d 644].) In this case, we are concerned with the second element.

The evaluation of probable cause requires an *objective* determination of the reasonableness of the pursuit of the underlying lawsuit. That is, whether, on the basis of the facts known to Contractor Appellants, the institution and prosecution of the cross-action was legally tenable. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 971 [12 Cal.Rptr.3d 54, 87 P.3d 802].) We consider whether any reasonable attorney would have thought the claim tenable. (*Ibid.*) "This rather lenient standard for bringing a civil action reflects 'the important public policy of avoiding the chilling of novel or debatable legal claims.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817 [123 Cal.Rptr.2d 19, 50 P.3d 733].) "A litigant or attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if also aware of evidence that will weigh against the claim. Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them. They have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious." (*Id.* at p. 822.) "Counsel who receives interrogatory answers appearing to present a complete defense might act reasonably by going forward with the defendant's deposition in light of the possibility that the defense will, on testimonial examination, prove less than solid. The reasonableness of counsel's persistence is, of course, a question of law to be decided on a case-by-case basis . . . ." (*Zamos v. Stroud, supra,* 32 Cal.4th at p. 970, fn. 9.)

We consider the evidence presented by Painter on the issue of whether Contractor Appellants had probable cause to initiate and maintain the cross-action against Painter. The evidence consists solely of Painter's Counsel's declaration to the effect that he had *told* Contractor Appellants that Painter had painted only exposed surfaces and was not responsible for any of the defects alleged by Condominium. There was no signed declaration from Painter presented to Contractor Appellants *while the action was pending.*[4] Nor was there any indication Painter presented a copy of any written contract between Painter and General Contractor setting forth the scope of Painter's work. There was, in fact, *no evidence* of the limited scope of Painter's work

---

[4] Painter's declaration submitted in opposition to the anti-SLAPP motion constitutes some evidence that Painter was not, in fact, liable for the defects. However, it is not evidence that Contractor Appellants *were aware of his nonliability at the time they pursued the cross-action.*

beyond Painter's Counsel's bald assertion that it was limited. In contrast, the Contractor Appellants were faced with a complaint from the Condominium which alleged a "fail[ure]" of "water-exposed exterior surfaces," and a defect report from their expert which attributed a certain percentage of fault for these failures to the painter of those surfaces. We conclude there was probable cause to initiate and maintain the cross-action against Painter as a matter of law. The wholly-unsupported representation by opposing counsel that his client was not liable cannot be sufficient to defeat probable cause.[5]

██ There is a suggestion in the record that the cross-complaint was brought without probable cause because it was untimely under the statute of limitations. This is incorrect. An action for latent construction defects must be brought within 10 years. (Code Civ. Proc., § 337.15, subd. (a).) When an action is timely brought under that section, a cross-complaint for indemnity in such an action is also timely. (Code Civ. Proc., § 337.15, subd. (c).) It is undisputed that Condominium's action for latent defects was timely filed, and that General Contractor's cross-complaint for indemnity was also timely. Painter never argued to the contrary; instead, Painter argued that since he had painted only the *exposed* surfaces of the building, any defect in his work was *patent*, and therefore subject to the four-year statute of limitations for patent defects. (Code Civ. Proc., § 337.1.) This argument depends on Painter's evidence that Contractor Appellants knew that his scope of work was limited to painting exposed surfaces. Since Painter has not established that Contractor Appellants lacked probable cause to believe he was also responsible for waterproofing and back priming, he has similarly failed to establish that Contractor Appellants lacked probable cause to believe he was responsible for latent defects. Therefore, Contractor Appellants had probable cause to believe their cross-complaint was timely.

As Painter has failed to establish a prima facie case that Contractor Appellants lacked probable cause to bring and maintain the underlying cross-action against him, the trial court erred in denying their anti-SLAPP motions.

---

[5] Indeed, it could well constitute malpractice for an attorney to drop a lawsuit, for which supporting evidence existed, merely because opposing counsel asserted the action was baseless.

## *DISPOSITION*

The orders denying the anti-SLAPP motions are reversed. The trial court is directed to enter new and different orders granting the anti-SLAPP motions and entering judgment of dismissal in favor of Contractor Appellants. Painter is to pay Contractor Appellants' costs on appeal.

Klein, P. J., and Aldrich, J., concurred.