**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN DOE, an individual, *Plaintiff-Appellee*, | No. 11-56325 |
| | D.C. No. 8:11-cv-00389-AG-MLG |
| v. | |
| GANGLAND PRODUCTIONS, INC., an Illinois Corporation; A&E TELEVISION NETWORKS, LLC, *Defendants-Appellants*. | OPINION |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted
February 6, 2013—Pasadena, California

Filed September 16, 2013

Before: Harry Pregerson, William A. Fletcher,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Pregerson

## SUMMARY[*]

### California Anti-SLAPP

The panel affirmed in part, and reversed in part, the district court's denial of defendants' anti-SLAPP motion, a special motion to strike the complaint under California Code of Civil Procedure § 425.16, in an action brought by plaintiff John Doe whose identity was not concealed in an episode of defendants' documentary television series, *Gangland*.

The panel held that California's anti-SLAPP statute applied to plaintiff's lawsuit because it arose from defendants' conduct in furtherance of their right of free speech in connection with issues of public interest. The panel held that at this juncture plaintiff's claims were not barred by the release he signed, and his statements were not barred by the parol evidence rule. The panel held that plaintiff met his burden to show a probability of prevailing on his claims for public disclosure of private fact; intentional infliction of emotional distress; false promise; and declaratory relief. The panel struck plaintiff's claims for appropriation of likeness and negligent infliction of emotional distress because plaintiff failed to establish a probability of prevailing on those two claims. The panel also held that plaintiff's multiple claims were not barred by California's single publication rule.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kelli L. Sager (argued), Rochelle L. Wilcox, and Lisa J. Kohn, Davis Wright Tremaine LLP, Los Angeles, California, for Defendants-Appellants.

Eric M. Schiffer (argued), William L. Buus, and Leslie F. Vandale, Schiffer & Buus, APC, Newport Beach, California, for Plaintiff-Appellee.

**OPINION**

PREGERSON, Circuit Judge:

Defendants' documentary television series, *Gangland*, provides an inside glimpse into America's most notorious street gangs. Plaintiff, a former prison gang member and police informant, has personal knowledge of certain high profile gangs. Plaintiff asserts that he agreed to be interviewed for an episode of *Gangland* on condition that his identity would be concealed in the broadcast. Defendants contend that Plaintiff knowingly signed a release that gave them the right to broadcast Plaintiff's identity.

When the *Gangland* episode aired, Plaintiff's identity was not concealed. Plaintiff filed a lawsuit for various claims alleging that Defendants' failure to conceal his identity in the broadcast endangered his life and cost him his job as an informant. Defendants then filed an anti-SLAPP motion, a special motion to strike the complaint under the California Code of Civil Procedure § 425.16. The district court denied the motion on the ground that Defendants failed to show that the anti-SLAPP statute is applicable to Plaintiff's complaint.

Defendants bring an interlocutory appeal of the district court's order. We affirm in part and reverse in part the district court's denial of Defendants' anti-SLAPP motion.

## JURISDICTION & STANDARD OF REVIEW

We have jurisdiction to review the denial of a motion to strike made pursuant to California's anti-SLAPP statute. *DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009, 1011 (9th Cir. 2013); *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003).

We review *de novo* the district court's denial of an anti-SLAPP motion. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010).

## PROCEDURAL AND FACTUAL BACKGROUND

### A. Plaintiff's Interview for *Gangland*

Defendants Gangland Productions, Inc. and A&E Television Networks, LLC, are the producers of the documentary television series, *Gangland*, which explores "some of America's most notorious gangs and the efforts of law enforcement agencies working to stop them." This lawsuit arises from a *Gangland* episode on the history of a white supremacist gang, Public Enemy Number 1.

Plaintiff John Doe worked as a police informant because of his personal knowledge of certain high profile gangs. In late 2009, Plaintiff was introduced to *Gangland* producer, Stephanie Kovac, by a police officer. The police officer suggested that Kovac may want to speak to Plaintiff about Public Enemy Number 1. Although Plaintiff was never a

member of Public Enemy Number 1, he was a childhood friend of Scott Miller, one of the gang's co-founders. Miller was allegedly murdered by members of Public Enemy Number 1. Shortly after his introduction to Kovac, Plaintiff agreed to be interviewed for *Gangland* for $300.

Plaintiff claims he told Kovac that he agreed to be interviewed on the condition that his face would be concealed. Plaintiff alleges that he wore a hat and a bandana to cover his face when he entered the interview room because he did not want his identity disclosed on camera. Plaintiff asserts Kovac told him that he did not need the hat or the bandana because his identity would be concealed through the production process. Plaintiff claims he removed those items based on these representations. Plaintiff emphasizes that he made it clear to Kovac and the cameraman that his life would be in danger if his identity was not concealed. According to Plaintiff, Kovac and the cameraman told him that they understood.

In contrast, Kovac asserts that before the interview, Plaintiff was not wearing anything that concealed his identity. Kovac claims that Plaintiff was shown on a camera monitor how he would appear on the program without his face concealed in any way, and that he approved his unconcealed appearance. According to Kovac, Plaintiff never requested that his identity be concealed. Plaintiff also posed for photographs showing his face and gang tattoos, and provided Kovac additional photographs showing his face and tattoos. Plaintiff admits that he had photographs taken but asserts that he believed his face and identity would be concealed in the photographs. Plaintiff asserts that his tattoos alone, without his face, do not reveal his gang affiliation.

The parties also dispute whether Plaintiff signed a release concerning his participation in *Gangland*.  Defendants claim that when Plaintiff arrived at the interview, Kovac asked him to sign a one-page release entitled "PROGRAM PARTICIPATION RELEASE AND CONSENT AGREEMENT."  The release stated that the "Participant" grants Gangland Productions, Inc. the right to film, record, and use "[his] name, likeness, image, voice, interview and performance."  The release further provided:

> The Participant agrees that Participant has allowed Participant's real name and identity to be used in the Program and, further, understands and acknowledges that revealing Participant's real name and identity in the Program may be dangerous for Participant and may result in bodily harm or death to Participant.

The release also waived all claims against anyone associated with the program for infringement of rights of publicity or misappropriation, intrusion, invasion of privacy, and infliction of emotional distress.

Plaintiff tells a different story.  Plaintiff claims that before filming his interview, and after he had been told his identity would be concealed, he was asked to sign a document.  Plaintiff states that he is dyslexic, is illiterate, and told Kovac that he has "extreme difficulty reading."  Kovac allegedly told Plaintiff the document was "just a receipt" for his $300 payment.  Plaintiff further alleges that he tried to have his girlfriend, who accompanied him to the interview, read the document to him before he signed it.  But, according to Plaintiff, Kovac told him that was not necessary because it

was only a receipt. Because of Kovac's representations, Plaintiff signed the document. Plaintiff never received a copy of the document he signed, and he believes that the document he signed was shorter than the release submitted by Defendants.

## B. The *Gangland* Broadcast

The *Gangland* episode aired on the History Channel. In the episode, several Public Enemy Number 1 members, with their full names and appearances disclosed, discussed the gang's violent activities. One member, with his face and voice concealed, talked about his knowledge of the gang. Photographs of other Public Enemy Number 1 members were shown with their faces concealed. Plaintiff appeared in the program, identified by his nickname, and was identified as a former member of an unspecified gang.

The episode portrayed the murder of Miller, co-founder of Public Enemy Number 1. Miller had discussed Public Enemy Number 1 in a television interview. His face was covered and his voice was disguised, but he was identifiable by his tattoos and other personal traits. Some members believed Miller had crossed the line, so he was allegedly brutally murdered. Miller had been a childhood friend of Plaintiff's and Plaintiff knew of the murder. In the episode, Plaintiff talked about Public Enemy Number 1 and details of Miller's murder. The episode reported on numerous other violent crimes allegedly committed by Public Enemy Number 1.

## C. Plaintiff's Lawsuit

Plaintiff filed a Complaint and a First Amended Complaint after the *Gangland* episode aired. Plaintiff's First Amended Complaint asserts claims for: (1) appropriation of likeness; (2) public disclosure of private fact; (3) false promise; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional distress; and (6) declaratory relief. Plaintiff alleges that after the *Gangland* episode aired: (1) he is no longer employable as an informant for law enforcement; (2) he has received numerous death threats; (3) he was evicted from his apartment; and (4) he was threatened by gang members. He also claims that he has suffered severe emotional distress.

## D. District Court's Denial of Defendants' Anti-SLAPP Motion

Defendants filed an anti-SLAPP motion to strike Plaintiff's First Amended Complaint. The district court denied the motion on the ground that the anti-SLAPP statute did not apply. *Doe v. Gangland Prods., Inc.*, 802 F. Supp. 2d 1116 (C.D. Cal. 2011). As a result, the district court did not address whether Plaintiff could show a probability of prevailing on the merits. Defendants timely appealed.[1]

---

[1] The parties submitted numerous evidentiary objections in the district court. We have reviewed the objections and, as the district court did, we rely only on admissible evidence. *Gangland Prods., Inc.*, 802 F. Supp. 2d at 1119.

## DISCUSSION

### A.  California's Anti-SLAPP Statute

To evaluate an anti-SLAPP motion, a court engages in a two-part inquiry.  The defendant bears the initial burden to show that the statute applies because the lawsuit arises from defendant's act in furtherance of its right of petition or free speech.  If the defendant meets its burden, the burden shifts to plaintiff to demonstrate a probability of prevailing on the merits of each of plaintiff's claims.  *Marijanovic v. Gray, York & Duffy*, 137 Cal. App. 4th 1262, 1270 (2006).  Under the anti-SLAPP statute, if the plaintiff cannot show a probability of prevailing on a claim, the claim is stricken. *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).  To evaluate an anti-SLAPP motion, the court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  Cal. Code Civ. Proc. § 425.16(b)(2).

### B.  Defendants Have Met Their Burden to Establish That Plaintiff's Lawsuit Arose from Their Protected Activity

The parties agree that for the anti-SLAPP statute to apply to Plaintiff's lawsuit, Defendants must show that they were engaged in conduct (1) in furtherance of the right of free speech, and (2) in connection with an issue of public interest. Cal. Code Civ. Proc. § 425.16(a), (e)(4).  As explained below, we hold that Defendants satisfied both requirements.

### 1. Defendants Have Shown Their Conduct Was in Furtherance of Their Right of Free Speech

To determine whether a defendant has met its initial burden, a court must focus on the "defendant's *activity* that gives rise to [its] asserted liability." *Navellier*, 29 Cal. 4th at 92. "By its terms, [the anti-SLAPP statute] includes not merely actual exercises of free speech rights but also conduct that furthers such rights." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (citing Cal. Code Civ. Proc. § 425.16(e)(4)). Consequently, California courts have held that pre-publication or pre-production acts such as investigating, newsgathering, and conducting interviews constitute conduct that furthers the right of free speech. *Taus v. Loftus*, 40 Cal. 4th 683, 713, 727–29 (2007); *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 164–65 (2003).

Plaintiff's claims are based on Defendants' acts of interviewing Plaintiff for a documentary television show and broadcasting that interview. These acts were in furtherance of Defendants' right of free speech. *See Taus*, 40 Cal. 4th at 713, 727–29 (holding that a published article and the investigation conducted in connection with the article, including an interview, constituted protected activity); *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1343–47 (2007) (concluding that a television broadcast and an interview in connection with the broadcast constituted protected activity).

The district court erroneously reasoned that Defendants were not engaged in protected activity for two primary reasons. First, when Defendants' motion was before the district court it was "uncontested that Defendants' *broadcast*

of the Program" was covered by the anti-SLAPP statute. *Gangland Prods., Inc.*, 802 F. Supp. 2d at 1121 (emphasis added). The district court, however, held that the statute did not apply because "the core of Plaintiff's complaint attacks Defendants' broadcast of the Program *without concealing his identity*." *Id.* at 1122 (emphasis added). The district court incorrectly concluded that under the anti-SLAPP statute, a lawful broadcast is in furtherance of Defendants' right of free speech, but an unlawful broadcast is not. The district court's analysis conflated the two distinct prongs of the anti-SLAPP statute. *See Lieberman*, 110 Cal. App. 4th at 165 (explaining that to hold "lawful newsgathering is an act in furtherance of one's right to free speech, but unlawful newsgathering is not" conflates the two prongs of the anti-SLAPP statute).

Contrary to the district court's analysis, a plaintiff's assertion that its claims are "based on [defendants'] alleged abusive activity does not . . . exempt a lawsuit from anti-SLAPP scrutiny." *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 740 (2003). To determine whether a defendant has met its initial burden, a court does not evaluate whether defendant's conduct was lawful or unlawful. *Id.* Instead, "any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support'" in the second step of the analysis when the plaintiff bears the burden to show a probability of prevailing. *Navellier*, 29 Cal. 4th at 94 (quoting *Paul for Council v. Hanyecz*, 85 Cal. App. 4th 1356, 1367 (2001)). If it were the case that a "defendant must first establish [that its] actions are constitutionally protected under the First Amendment as a matter of law," then the "[secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous." *Id.* at 94–95 (internal quotation marks and citation omitted).

Accordingly, California courts consistently hold that defendants may satisfy their burden to show that they were engaged in conduct in furtherance of their right of free speech under the anti-SLAPP statute, even when their conduct was allegedly unlawful.[2] *See Taus*, 40 Cal. 4th at 706–07, 713, 727–29 (holding that defendants' investigation, including an interview that was allegedly fraudulently obtained, constituted protected activity); *Hall*, 153 Cal. App. 4th at 1342 (same); *Lieberman*, 110 Cal. App. 4th at 164–66 (concluding that defendants' newsgathering, including surreptitious videotape recordings that were allegedly illegally obtained, constituted protected activity). Thus, Plaintiff's assertion that Defendants fraudulently disclosed his identity has no bearing on whether Defendants engaged in protected activity.

Second, the district court erroneously held that Defendants were not engaged in protected activity because "Defendants' broadcast television show about gang violence" merely "lurks in the background of Plaintiff's claims." *Gangland Productions, Inc.*, 802 F. Supp. 2d at 1122. Plaintiff's lawsuit arises directly from Defendants' act of broadcasting *Gangland*. But for the broadcast and Defendants' actions in connection with that broadcast, Plaintiff would have no reason to sue Defendants. *See*, *e.g.*, *Navellier*, 29 Cal. 4th at 90 (finding lawsuit arose from defendant's litigation activity because "but for the [litigation activity], plaintiffs' present claims would have no basis").

---

[2] The exception to this rule is that the anti-SLAPP statute cannot be invoked by a defendant "whose assertedly protected activity is conclusively demonstrated to be illegal as a matter of law." *Flatley v. Mauro*, 39 Cal. 4th 299, 319, 329 (2006). Plaintiff does not contend that the *Flatley* exception applies here.

We conclude that Defendants have met their burden to show that Plaintiff's lawsuit arises from Defendants' conduct in furtherance of their right of free speech.**[3]**

## 2. Defendants Have Shown Their Conduct Was Connected to a Matter of Public Interest

To meet their initial burden, Defendants must also show that their conduct was "in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e). "[A] topic of widespread, public interest" satisfies this requirement. *Rivero v. Am. Fed'n of State*, *Cnty.*, *& Mun. Emps.*, *AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003).**[4]**

In finding that Defendants failed to satisfy the public interest requirement, the district court held that the *Gangland* episode's "general topics of gang violence and Miller's murder are topics of widespread public interest, [but] Plaintiff's identity is not." *Gangland Prods., Inc*., 802 F.

---

**[3]** Plaintiff argues that applying the anti-SLAPP statute in this case would make every copyright or contract claim involving television subject to dismissal under the anti-SLAPP statute. We disagree. For one, "the anti-SLAPP statute does not apply to federal law causes of action," such as copyright claims. *Hilton*, 599 F.3d at 901. Further, Plaintiff's concerns "fall prey . . . to the fallacy that the anti-SLAPP statute allows a defendant to escape the consequences of wrongful conduct by asserting a spurious First Amendment defense." *Navellier*, 29 Cal. 4th at 93. Claims "that possess minimal merit" are not subject to dismissal under the anti-SLAPP statute. *Id.*

**[4]** *See also Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (an issue of public interest is "*any issue in which the public is interested*"); *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003) (an issue of public interest is "something of concern to a substantial number of people").

Supp. 2d at 1123. The district court's analysis is, in part, incorrect.

The district court correctly determined that Defendants' *Gangland* episode's "general topics of gang violence and Miller's murder" are issues of public interest. *Id.*; *see Lieberman*, 110 Cal. App. 4th at 165 (holding that a news report on the "unlawful dispensing of controlled substances is an issue of great public interest"). Indeed, Plaintiff concedes that the topics of his interview, Public Enemy Number 1 and Miller's murder, are issues of public interest. Compl. ¶¶ 30, 40, 51 (stating that "gang activity" and the "killing of a gang-affiliated police informant" is "of legitimate public concern").

The district court, however, incorrectly determined that Defendants were required to show an independent public interest in Plaintiff's identity. *See Gangland*, 802 F. Supp. 2d at 1123 ("Defendants must show that including Plaintiff's identity in the Program was 'in connection with a public issue or an issue of public interest.'" (quoting Cal. Code Civ. Proc. § 425.16(e)(4))).

In *Taus v. Loftus*, the California Supreme Court did not directly address the question whether a defendant must show a specific public interest in plaintiff under the anti-SLAPP statute. 40 Cal. 4th at 712. But the court's public interest inquiry focused on defendants' general activities, not the plaintiff's. *Id.* The court found that "there can be no question . . . that *defendants' general course of conduct* from which plaintiff's cause of action arose was clearly activity 'in furtherance of [defendants'] exercise of . . . free speech . . . in connection with a public issue.'" *Id.* (emphasis added) (alterations in original).

Several California Court of Appeal decisions have instructed that the proper inquiry is whether the broad topic of defendant's conduct, not the plaintiff, is connected to a public issue or an issue of public interest.[5] In *M.G. v. Time Warner, Inc.*, defendants' publications on child molestation included a photograph of a Little League team whose manager had pleaded guilty to molesting children he had coached. 89 Cal. App. 4th 623, 626 (2001). The players and the other coaches shown in the photograph sued for invasion of privacy. Plaintiffs "tr[ied] to characterize the 'public issue' involved as being limited to the narrow question of the identity of the molestation victims." *Id.* at 629. The court rejected that definition as "too restrictive." *Id.* Instead, the court looked at the "broad topic" of defendants' publications and held that "the general topic of child molestation in youth sports" was an issue of public interest. *Id.*

Similarly, in *Terry v. Davis Community Church*, the court found that defendants' reports and meetings regarding an inappropriate relationship between plaintiff husband and plaintiff wife, church youth group leaders, and a girl in their youth group involved an issue of public interest under the anti-SLAPP statute. 131 Cal. App. 4th 1534, 1538, 1547–48 (2005). The court rejected plaintiffs' attempt to narrow the inquiry to whether there was public interest in "a private relationship between [the plaintiff husband] and the girl." *Id.* at 1547. It held that "the broad topic of the report and the

---

[5] In the absence of a California Supreme Court decision directly on point, we "follow the decisions of the state's intermediate appellate courts where there is no convincing evidence that the state supreme court would decide differently." *Bills v. U.S. Fid. & Guar. Co.*, 280 F.3d 1231, 1234 n.1 (9th Cir. 2002).

meetings was the protection of children in church youth programs, which is an issue of public interest." *Id.* at 1548.

Also instructive is *Tamkin v. CBS Broadcasting, Inc.*, which held that defendants' broadcast of a television show that allegedly used plaintiffs' personas was a matter of public interest.   193 Cal. App. 4th 133, 139, 143 (2011).   In conducting the public interest inquiry, the court explained:

> We believe the statutory language compels us to focus on the conduct of the defendants and to inquire whether that conduct furthered such defendants' exercise of their free speech rights concerning a matter of public interest. We find no requirement in the anti-SLAPP statute that the plaintiff's persona be a matter of public interest.

*Id.* at 144.

Under *M.G.*, *Terry*, and *Tamkin*, because Defendants demonstrated a public interest in the broad topics of *Gangland*, they satisfied the public interest requirement under the anti-SLAPP statute.  They were not required to show a specific public interest in Plaintiff.[6]

---

[6] *M.G.*, *Terry*, and *Tamkin* all involved plaintiffs who were private figures.  In instances where a plaintiff is a public figure, the general topic of the defendant's activities is often the plaintiff.  In that case, to show a public interest in the topic of its activities, the defendant must necessarily show an interest in the public figure plaintiff. *See*, *e.g.*, *Hilton*, 599 F.3d at 907–08.

We find Plaintiff's argument to the contrary unpersuasive. Plaintiff argues that Defendants cannot satisfy the public interest requirement under *Dyer v. Childress*, 147 Cal. App. 4th 1273 (2007).  In *Dyer*, the plaintiff sued the creators of the movie *Reality Bites* for using his name as the main character in an anniversary edition of the film.  *Id.* at 1277. Plaintiff's name was used only as "an inside joke" because the character named after him was "dissimilar" to plaintiff. *Id.*  The court held that there was no public interest under the anti-SLAPP statute because "[a]lthough *Reality Bites* may address topics of widespread public interest, the defendants are unable to draw any connection between those topics and [plaintiff's] . . . claims."  *Id.*  at 1280.  The court emphasized that "there is no discernable public interest in [plaintiff's] persona."  *Id.*

Plaintiff's reliance on *Dyer* is misplaced.  Unlike *Dyer*, Plaintiff is directly connected to the issues of public interest, gang violence and Miller's murder.  Plaintiff agreed to do the interview for *Gangland* because of his personal knowledge on these topics.

We conclude that Defendants' acts in furtherance of their right of free speech were in connection with issues of public interest.  Thus, Defendants have met their initial burden under the anti-SLAPP statute.

## C. Plaintiff Has Met His Burden to Demonstrate a Probability of Prevailing on Some of His Claims

"At the second step of the anti-SLAPP inquiry," we review *de novo* whether a plaintiff has met its burden "to show a probability of success" on the merits.  *Mindys Cosmetics, Inc.*, 611 F.3d at 598.  "[A] plaintiff 'must

demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002) (quoting *Matson v. Dvorak*, 40 Cal. App. 4th 539, 548 (1995)). "The applicable burden 'is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff.'" *Mindys Cosmetics, Inc.*, 611 F.3d at 599 (citation omitted). This means that in ruling on an anti-SLAPP motion, we cannot "*weigh* the credibility or comparative probative strength of competing evidence." *Wilson*, 28 Cal. 4th at 821. But we should strike a claim if "defendant's evidence supporting the motion" establishes "as a matter of law" that plaintiff cannot show a probability of prevailing. *Id.*

### 1.  At This Stage, the Release Does Not Bar Plaintiff's Claims

Defendants contend that Plaintiff's claims are barred because Plaintiff signed a release that (1) expressly consented to disclosure of his real name and identity in the broadcast, and (2) waived all claims for liability or damages caused by an infringement of rights of publicity or misappropriation, intrusion, or infliction of emotional distress.

Under California law, however, a plaintiff may demonstrate "fraud in the execution or inception of a contract," by establishing that as a result of defendant's fraud the plaintiff did not know what he or she was signing. *Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 921 (2010). Once a plaintiff has shown

fraud in the execution or inception of a contract, "the contract lacks mutual assent and is void." *Id.*

Plaintiff claims in a sworn declaration that he has dyslexia, is illiterate, and that he told Kovac he has "extreme difficulty reading." Plaintiff claims that when he was provided the alleged release, Kovac told him it was "just a receipt" for his $300 payment for the interview. Because of these representations, Plaintiff did not ask his girlfriend to read out loud the document before he signed it. At this stage in the proceedings, Plaintiff has made a sufficient showing of fraud in the execution of the release, which, if true, would render the release void. *See Hotels Nev. v. L.A. Pac. Ctr.*, *Inc*, 144 Cal. App. 4th 754, 763–64 (2006) (finding that plaintiff sufficiently alleged fraud in the execution of a contract because plaintiff claimed that the contracts defendant sought to enforce "were not the same documents that [plaintiff had] signed"); *Mairo v. Yellow Cab Co. of Cal.*, 208 Cal. 350, 351–52 (1929) (holding that a triable issue of fraud existed where an illiterate plaintiff signed releases but claimed that he believed he had signed a permit and receipts).

In the cases relied upon by Defendants, the plaintiffs did not assert that they had been misled about the contents of the releases that they signed. Instead, the plaintiffs' beliefs regarding the scope of the releases they signed were attributable to their own failure to read the documents or have the documents read to them. *See*, *e.g.*, *Morta v. Korea Ins. Corp.*, 840 F.2d 1452, 1457–58 (9th Cir. 1988); *Casey v. Proctor*, 59 Cal. 2d 97, 104–05 (1963); *Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n*, *Inc*., 171 Cal. App. 4th 1356, 1393 & n.23 (2009).

We therefore conclude that at this juncture, Plaintiff's claims are not barred by the release. It follows that Plaintiff's statements are not barred by the parol evidence rule, which "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004) (internal quotation marks omitted). The parol evidence rule does not bar extrinsic evidence "[w]here the validity of the agreement is the fact in dispute" or "to establish illegality or fraud." Cal. Code Civ. Proc. § 1856(f), (g); *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1182 (2013) (stating the parol evidence rule cannot "be used as a shield to prevent the proof of fraud" (quoting *Ferguson v. Koch*, 204 Cal. 342, 347 (1928))). Further, at this time, Plaintiff does not need to show that the release is unconscionable because he is not required to do so if the release is void.

### 2. Plaintiff Has Shown a Reasonable Probability of Prevailing on Four Claims

#### a. Public Disclosure of Private Fact

To prove a claim for public disclosure of private fact, a plaintiff must show: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 214 (1998) (internal quotation marks and citations omitted). Plaintiff has made a prima facie showing of all four elements.

The first element of public disclosure is met because it is undisputed that *Gangland* was broadcast publicly. The

second element, disclosure of a private fact, is met because Defendants do not contest that Plaintiff's identity was private.

With respect to the third element, Defendants do not dispute that the disclosure of information connecting a person with a violent gang, if done involuntarily, may be offensive and objectionable to a reasonable person.  Defendants argue, however, that Plaintiff knew that he would be recognized on *Gangland* and voluntarily agreed to do the interview anyway. Given the sharp factual dispute between the parties concerning (1) the validity of a release giving Defendants a right to disclose Plaintiff's identity and (2) whether Plaintiff conditioned the interview on his identity being concealed, Plaintiff has proffered sufficient evidence that the disclosure of his identity would be offensive and objectionable.

The fourth element requires Plaintiff to make a prima facie showing that his identity was not of legitimate public concern. *Shulman*, 18 Cal. 4th at 214.  This element relates to "newsworthiness" and is evaluated by California courts under "a three-part standard, ordinarily requiring the jury to weigh: (1) the social value of the facts published, (2) the depth of the publication's intrusion into ostensibly private affairs, and (3) the extent to which the party voluntarily assumed a position of public notoriety."  *Capra v. Thoroughbred Racing Ass'n of N. Am.*, *Inc.*, 787 F.2d 463, 464 (9th Cir. 1986).  The newsworthiness inquiry focuses on the particular fact at issue that was disclosed, not on the general topic of the publication. *Times-Mirror Co. v. Sup. Ct.*, 198 Cal. App. 3d 1420, 1429 (1988).  "If there is room for differing views whether a publication [of a plaintiff's identity] would be newsworthy the question is one to be determined by the jury and not the court."  *Id.* at 1429.

California courts have thus found newsworthiness to be a question of fact where reasonable minds could differ on the social value of publishing a plaintiff's identity in light of the level of intrusion into the plaintiff's life or the degree to which plaintiff voluntarily opened his or her personal life. *See M.G.*, 89 Cal. App. 4th at 633–36 (finding that a jury could find plaintiffs' identities in publications on child molestation not newsworthy based on state laws prohibiting the disclosure of the identity of minors and victims of sex crimes, and evidence that their identities could have been concealed); *Times-Mirror Co.*, 198 Cal. App. 3d at 1425–26, 1428–29 (holding that a jury could find plaintiff's name as a witness to a crime not newsworthy given plaintiff's interest in her "safety and the state's interest in conducting a criminal investigation"); *see also Diaz v. Oakland Tribune, Inc*., 139 Cal. App. 3d 118, 134 (1983) (concluding that the newsworthiness of plaintiff's sexual identity was a question for the jury because it was disputed whether plaintiff "voluntarily acceded to a position of public notoriety").

Here, Plaintiff asserts that the intrusion into his identity has endangered his life and caused him emotional distress. In the *Gangland* broadcast, other gang members' identities were concealed. This indicates at least some members' identities were of minimal social value. The broadcast focused on Public Enemy Number 1, their founders, and their murder victims. Plaintiff did not belong to any of these groups, making him more akin to the third-party witness in *Times-Mirror Co*. Although Plaintiff voluntarily agreed to do the interview, he allegedly did so on the condition that his identity be concealed. On this record, Plaintiff has shown a reasonable probability that his identity was not of legitimate public concern. *Shulman*, 18 Cal. 4th at 214.

We therefore conclude that Plaintiff has a reasonable probability of prevailing on his claim for public disclosure of private fact.

### b.  Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982) (internal quotation marks and citations omitted). For the reasons discussed above, if Defendants agreed to conceal Plaintiff's identity, but then intentionally disclosed it, Defendants' actions would likely constitute extreme and outrageous conduct done with the intent to cause emotional distress.  Further, Plaintiff asserts that he has suffered emotional distress because he has lost his employment and apartment, and gang members threatened him.  Thus, Plaintiff has established a reasonable probability of prevailing on his intentional infliction of emotional distress claim.

### c.  False Promise

"[A]n action based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 159 (1991).  The elements of fraud are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).  "A promise to do something

necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Id.*

For the reasons discussed above, if Plaintiff's assertions are credited, Defendants misrepresented that they would conceal his identity and also misrepresented the nature of the release that they had Plaintiff sign. We thus conclude that Plaintiff has shown a probability of prevailing on his claim based on a false promise.

### d.  Declaratory Relief

"[U]nder a contract," in cases of "actual controversy relating to the legal rights and duties of the respective parties," a party may ask the court to make a binding declaration of these rights and duties. Cal. Code Civ. Proc. § 1060. Plaintiff has demonstrated there is an actual controversy regarding the parties' rights and duties under the release. Thus, Plaintiff's claim for declaratory relief has sufficient merit.

### 3.  Plaintiff Has Failed to Show a Reasonable Probability of Prevailing on Two Claims

### a.  Appropriation of Likeness

Section 3344 provides that any person who "knowingly uses another's . . . likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases . . . without such person's prior consent . . . shall be liable for any damages sustained by the person . . . injured as a result thereof." Cal. Civ. Code § 3344(a). Section 3344(d), however, contains an exception

to liability for any "use of a . . . likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign." *Id.* § 3344(d).

California courts have held that documentaries on the popular pastimes of surfing and baseball fall within the "public affairs" category of § 3344(d). *See Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 544 (1993); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 405–06, 416 (2001). Although Defendants' documentary concerned the criminal activities of a gang, not a popular sport, the category of "public affairs" is presumed to "mean something *less important* than news." *Dora*, 15 Cal. App. 4th at 545 (emphasis added). We conclude that even if *Gangland* does not fall within the news exception under § 3344(d), it falls within the public affairs exception. *See Baugh v. CBS, Inc.*, 828 F. Supp. 745, 754 (N.D. Cal. 1993) (holding news magazine story on assisting crime victims, even if it "[did] not fit the traditional notion of news, it [was] undoubtedly . . . protected under the category of public affairs" under § 3344(d)). Therefore, Plaintiff has not established a reasonable probability of prevailing on his claim for appropriation of likeness.

### b.  Negligent Infliction of Emotional Distress

"[T]here is no independent tort of negligent infliction of emotional distress." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993). "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Id.* at 985.

In *Baugh v. CBS*, a mother and her daughter asserted a claim for negligent infliction of emotional distress under California law after they were shown in a television broadcast on street crimes. *Baugh*, 828 F. Supp. at 749–50. The mother alleged that she had agreed to let the television crew film in her house on the condition that she would not appear on television. *Id.* at 752. She asserted that defendants agreed, but then broadcast her and her daughter's identities in at least some versions of the television show. *Id.* at 750 n.1.

In granting defendants' motion to dismiss the negligence claim, the court rejected plaintiffs' assertion that defendants "had a legal duty not to reveal . . . private facts" about her and her daughter in the broadcast. *Id*. at 758. Plaintiffs "provid[ed] no authority for the proposition that a legal duty arises in this situation." *Id.* The court held that "[i]n the absence of a special duty, the decision to go ahead with the broadcast cannot be the basis for a negligence claim." *Id.*[7]

Similar to *Baugh*, Plaintiff fails to cite any authorities demonstrating that Defendants had a legal duty not to reveal private facts about him during the broadcast. Thus, Plaintiff has failed to establish a reasonable probability of prevailing on his claim for negligent infliction of emotional distress. *See Navallier*, 29 Cal. 4th at 88 (instructing that a plaintiff must show a claim is legally sufficient as well as supported by sufficient facts).

---

[7] *Baugh* held, however, that plaintiffs' allegations adequately stated a claim for *intentional* infliction of emotional distress. *Baugh*, 828 F. Supp. at 758. Likewise, as discussed above, Plaintiff has established a reasonable probability of prevailing on his claim for intentional infliction of emotional distress.

**4. Single Publication Rule**

Pursuant to California's Uniform Single Publication Act:

> No person shall have more than one cause of
> action for damages for libel or slander or
> invasion of privacy or any other tort founded
> upon any single publication or exhibition or
> utterance, such as any one issue of a
> newspaper or book or magazine or any one
> presentation to an audience or any one
> broadcast over radio or television or any one
> exhibition of a motion picture. Recovery in
> any action shall include all damages for any
> such tort suffered by the plaintiff in all
> jurisdictions.

Cal. Civ. Code § 3425.3.

"The single-publication rule limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication, thereby 'spar[ing] the courts from litigation of stale claims' where an offending book or magazine is resold years later." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166–67 (9th Cir. 2011) (quoting *Christoff v. Nestle USA*, *Inc.*, 47 Cal. 4th 468, 479 (2009)). The rule likewise "provide[s] repose to defendants by precluding stale claims based on dated but still-lingering mass communications," *id.* at 1168, and also "protect[s] defendants from harassment through multiple suits." *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1131 (9th Cir. 2006).

Defendants contend that under the single publication rule, Plaintiff's "overlapping and duplicative claims, all arising from the alleged disclosure of his identity in the Program . . . should be stricken." Defendants do not argue that Plaintiff's claims are untimely. Instead, their argument is based solely on the ground that the single publication rule prevents multiplicity of claims. Defendants interpret the statute to mean that, at the outset, Plaintiff may assert only one theory of recovery arising from the *Gangland* broadcast. In other words, Defendants argue that Plaintiff may plead a claim for fraud *or* public disclosure of private fact *or* intentional infliction of emotional distress. We are not persuaded.

The California Supreme Court has explained that the single publication rule bars a plaintiff from filing multiple lawsuits and asserting multiple instances of the same tort. *Christoff*, 47 Cal. 4th at 477–81. Before the single publication rule, "the general rule in defamation cases [was] that 'each time [a] defamatory statement [was] communicated to a third person … the statement [was] said to have been published,' giving rise to a separate cause of action." *Id.* at 477 (quoting *Shively v. Bozanich*, 31 Cal. 4th, 1230, 1242 (2003)). With "the advent of mass communication," the single publication rule was created to prevent a plaintiff from asserting multiple causes of defamation for a single publication. *Id.* "Where the offending language is read or heard by a large audience, the [single publication] rule limits the plaintiff to a single cause of action for each mass communication. A separate cause of action for each member of the public audience is disallowed." *Id.* at 481. If the law were otherwise, publishers of mass communications would be subject to "'hundreds, thousands, or even millions of causes of action for a single issue of a periodical or edition of a book.'" *Id.* at 478 (quoting *Shively*, 31 Cal. 4th at 1243–44).

Here, under the single publication rule, Plaintiff may not file separate lawsuits across the country based on the *Gangland* episode, or assert a million claims for public disclosure of private fact based on each audience member who saw his identity. But the rule does not limit Plaintiff to one theory of recovery or one distinct cause of action or claim for relief. Notably, Defendants fail to provide any binding authority demonstrating that the single publication rule bars timely, multiple theories of recovery under different causes of action or claims for relief asserted in Plaintiff's complaint.**[8]** *Cf. M.G.*, 89 Cal. App. 4th at 630, 637 (holding that the single publication rule permits plaintiffs to assert "one cause of action [for invasion of privacy], expressing four different theories" and refusing to strike plaintiffs' emotional distress claims, even if they are cumulative).

Moreover, "[t]he purpose of the [single publication] rule is to include in the single suit *all damages* resulting anywhere from the single aggregate publication." Restatement (Second) of Torts § 577A cmt. e (1977) (emphasis added). The purpose of the rule would be undermined if a plaintiff is required to choose, at the time of filing his complaint, one single theory to recover all of his damages, without the benefit of any discovery. *Accord Roberts*, 660 F.3d at 1168 (rejecting plaintiff's argument that "a mass communication is

---

**[8]** The type of relief a plaintiff may assert may be limited by other doctrines. For instance, it is well-established that a "plaintiff cannot evade [the] procedural requirements of defamation actions by alleging that the claim is not for loss of reputation but for humiliation and emotional distress." *Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 872–73 (2004) (citing *Grimes v. Carter*, 241 Cal. App. 2d 694, 699–701 (1966)). Further, a plaintiff may be barred from "obtain[ing] double recovery" where claims are "redundant." *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477–78 (9th Cir. 1995).

republished when the defendant fails to retract it after receiving notice of its falsity" because it "undermines the single-publication rule"). Thus, we hold that Plaintiff's claims are not barred by the single publication rule.

## CONCLUSION

We **AFFIRM** in part and **REVERSE** in part the district court's order denying Defendants' anti-SLAPP motion. We hold that the anti-SLAPP statute applies to Plaintiff's lawsuit because it arises from Defendants' conduct in furtherance of their right of free speech in connection with issues of public interest. We hold that Plaintiff met his burden to show a probability of prevailing on his claims for (1) public disclosure of private fact; (2) intentional infliction of emotional distress; (3) false promise; and (4) declaratory relief. We strike Plaintiff's claims for (1) appropriation of likeness and (2) negligent infliction of emotional distress because Plaintiff failed to establish a probability of prevailing on those two claims. We **REMAND** for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.