Filed 5/5/15  Nobutama Corp. v. Son CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| NOBUTAMA CORPORATION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KYUNG HEE SON et al.,<br><br>Defendants and Respondents. | D065593<br><br><br>(Super. Ct. No. 37-2013-00054905-<br>CU-NP-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

Kaloogian & Fuselier, Lowell Robert Fuselier and David T. Hayek for Plaintiff and Appellant.

Law Office of Wayne Templin and Wayne Templin for Defendant and Respondent Kyung Hee Son.

Klinedinst, Heather L. Rosing and Daniel S. Agle for Defendants and Respondents Nathan Low, James E. Lund and The Law Offices of James E. Lund.

This malicious prosecution action brought by Nobutama Corporation, owned by Mark Lee, arises from underlying litigation in which Nathan Low and his employer, The Law Offices of James E. Lund, represented Kyung Hee Son in the prosecution of contract and fraud based claims related to the sale of Lee's floral business to Son. In response to Nobutama's malicious prosecution action against Son and defendants Low, the Law of Offices of James E. Lund, and Lund himself (the Attorney Defendants), Son and the Attorney Defendants brought a special motion to strike under Code of Civil Procedure section 425.16,[1] commonly known as an anti-SLAPP motion, asserting Nobutama could not show Son's claims were (1) terminated in Nobutama's favor, (2) lacked probable cause, or (3) Son and the Attorney Defendants initiated the claims against Nobutama maliciously. The trial court granted the motion and entered judgment in favor of Son and the Attorney Defendants. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Litigation*

Mark Lee was the owner of Tri-City Florist, a business he began in 1986.[2] His wife, Joyce Lee, was employed as the shop manager. As result of age and health, Mark wanted to retire from the business. Mark met with Son several times to discuss her

---

[1]     All statutory references are to the Code of Civil Procedure unless otherwise noted. We refer to the Lees as Mark and Joyce only to avoid confusion and mean no disrespect by the use of their first names.

[2]     The factual history of the underlying litigation is drawn from this court's nonpublished opinion in that case, *Kyung Hee Son v. Mark Lee* (July 21, 2014, D063192), of which we take judicial notice.

purchase of Tri-City Florist. Son had no prior experience operating a floral business and wanted to ensure Joyce would continue working as the manager to help Son learn the business. In 2009 Son entered an agreement to purchase the business from Mark. After Mark accepted Son's offer to purchase Tri-City Florist, Son, on the advice of her accountant, formed Ivy Global Corporation, Inc. (ICG) to acquire Tri-City. With Mark's agreement, the parties amended the escrow instructions to reflect ICG as the buyer and all further documentation concerning the sale was signed by Son in her capacity as president of ICG. The sales agreement prohibited Mark from competing with Son within a five-mile radius of Tri-City Florist.

After the sale of Tri-City Florist was complete, Joyce continued to work for Son for several months. When Joyce stopped working for Tri-City Florist, however, sales began to decline. In March 2010 Joyce took a bridal client on the side. Son later learned that Joyce also began soliciting business from Tri-City Medical Center, an important client for Tri-City Florist.

As a result, Son believed the Lees were violating the noncompetition clause contained in the sales agreement. Son retained Low as her counsel and when an attempt to resolve the dispute out of court failed, on June 16, 2011, she filed suit against the Lees. Son brought her complaint in her individual capacity and alleged contract and tort claims, and violation of the Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.) against the Lees "individually and doing business as Nobutama Corporation and/or Nobutama

3

Wedding Studio."[3]  In discovery, Low obtained sales invoices from the Lees' accountant showing Nobutama Corporation (Nobutama) had regularly sold flowers to Tri-City Medical Center.  Low filed a motion for leave to amend the complaint to name Nobutama as a separate defendant.

Thereafter, Low took the deposition of Mark, who confirmed he formed Nobutama to engage in floral sales, authenticated the sales invoices obtained from the Lees' accountant, and admitted Nobutama had made sales to Tri-City Medical Center.  Mark also testified he was the only shareholder, director and officer of Nobutama, Nobutama had no employees and was never capitalized, and that Nobutama was operated out of the Lees' home.  The Lees did not oppose Low's motion to amend to add Nobutama as a defendant and the trial court granted the motion.  After the first amended complaint (FAC)[4] was filed , Nobutama demurred, arguing the claims asserted against it failed as a matter of law because the corporation was not formed until after the sale of Tri-City Florist to Lee.

The trial court's tentative ruling sustained the demurrer without leave to amend, rejecting Son's argument based on "reverse alter ego" liability.  At the hearing on the motion, Low argued Son should be afforded the opportunity to amend her complaint

---

[3]    Son's complaint asserted claims for rescission based on fraud, negligent misrepresentation, mistake, and failure of consideration; fraud; negligent misrepresentation; breach of contract; breach of the covenant of good faith and fair dealing; intentional interference with prospective economic advantage; and unfair competition.

[4]    The FAC asserted the same claims as Son's original complaint against all of the defendants.

4

because her claims could properly be brought under several additional alternative theories of liability, including conspiracy, aiding and abetting, and respondeat superior. The court responded that it thought its ruling was correct, but was inclined to sustain the demurrer with leave to amend. The court also stated it believed Son's amendment of the complaint would result in an additional demurrer and the delay of the July 2012 trial date into 2013. In response to these comments about delay, Low expressed his desire to keep the existing trial date but wanted to ensure he would have the ability to amend with respect to Nobutama if the trial date were later postponed for other reasons. The court agreed that if Son chose not to amend and the trial date was postponed later, Son would then have the opportunity to amend: "I want to make it clear for the record, if you elect to go on these pleadings to preserve the trial date, and I'm convinced at a later time that I can't hold that trial date for you, I would probably allow you to then revisit the amendment to the pleadings that you forgave."[5]

After the court issued its order sustaining Nobutama's demurrer, Son elected not to amend and judgment was entered in Nobutama's favor. The case proceeded to a bench trial against the Lees in July 2012. The court bifurcated trial to consider first whether Son had standing to pursue her claims. At the conclusion of the presentation of evidence on this phase, the Lees moved for nonsuit against Son on the ground she lacked standing to sue because she had vested title in IGC. The court granted the motion with respect to Son's contract claims, but denied the motion with respect to her fraud and negligent

---

[5]     The minute order states the demurrer is sustained without leave to amend. The Lees do not dispute, however, that the trial court provided Son with leave to amend.

misrepresentation claims. After the second phase of the trial on these claims the court concluded the Lees had not committed fraud or negligent misrepresentation in the sale of Tri-City Florist.

At Son's request the trial court issued a statement of decision, which found the Lees did not misrepresent their intent to retire at the time of the sale, but decided to resume competing with Tri-City after the sale. The court also found there was miscommunication with respect to the scope of the business being sold to IGC, but the mistakes were caused by the real estate broker involved in the transaction and could not be attributed to the Lees. Son appealed the trial court's final judgment.[6]

B. *The Instant Malicious Prosecution Action*

While Son's appeal was pending, Nobutama filed a complaint asserting a claim of malicious prosecution. Nobutama's complaint alleged Son and the Attorney Defendants lacked probable cause to believe Son had a meritorious claim against it and acted with malice by amending Son's complaint to add Nobutama as a defendant.

Son and the Attorney Defendants each filed anti-SLAPP motions asserting the filing of the lawsuit was protected under section 425.16 and Nobutama could not establish a probability of prevailing on its claims. Nobutama opposed the motion. After oral argument, the trial court granted the anti-SLAPP motions. Judgment was entered for Son and the Attorney Defendants. Thereafter, both sought and obtained attorney fees under section 425.16, subdivision (c)(1).

---

6 This court affirmed the trial court's judgment in favor of the Lees.

## DISCUSSION

Nobutama contends the trial court erred in granting the anti-SLAPP motions because it established a probability of prevailing on its claims of malicious prosecution against Son and the Attorney Defendants. Nobutama asserts it offered sufficient evidence to support each of the three elements of its claims: (1) The prior action was terminated favorably to Nobutama, (2) Son and the Attorney Defendants did not have probable cause to support their claims against Nobutama, and (3) the claims were initiated with malice.

## I

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

## II

Under section 425.16, subdivision (b)(1) any cause of action against a person arising from that person's exercise of free speech in connection with a public issue is subject to a special motion to strike. The anti-SLAPP statute was enacted " 'to prevent and deter "lawsuits . . . brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." [Citation.]

7

Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought " 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target.' " ' " (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 278.)

In determining whether an action is subject to a special motion to strike under the anti-SLAPP statute, courts engage in a two-step process. First, the defendant must make a threshold showing that the claim arises from protected activity. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) If that showing is made, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. (*Taus v. Loftus*, *supra*, 40 Cal.4th at p. 712.)

## III

There is no dispute Nobutama's malicious prosecution claims arise from conduct that is protected under section 425.16. Therefore, we must determine whether Nobutama met its burden of having "demonstrated a probability of prevailing on the claim[s]." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) To satisfy this burden, "the plaintiff must 'state[ ] and substantiate[ ] a legally sufficient claim.' [Citation.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.) "Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a

8

summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)

"[I]n order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871-872.)

A

Nobutama asserts the first element is established because the court in the underlying action sustained its demurrer and Son failed to amend her complaint "creating the presumption she had stated her best case" and confirming she "could not assert any facts to breath merit into her claims." " '[F]avorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 751.) "If the resolution of the underlying litigation 'leaves some doubt as to the defendant's innocence or liability[, it] is not a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff.' " (*Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855, italics omitted.)

"A voluntary dismissal may be an implicit concession that the dismissing party cannot maintain the action and may constitute a decision on the merits." (*Eells v.*

9

*Rosenblum*, *supra*, 36 Cal.App.4th at p. 1855.)   However, "[t]he reasons for the dismissal of the action must be examined to determine whether the termination reflected on the merits."  (*Ibid.*)  Further, " ' "the focus is not on the malicious prosecution plaintiff's opinion of his innocence, but on the opinion of the dismissing party." ' "  (*Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 893, italics omitted.)

Son and the Attorney Defendants assert the decision not to amend amounted to voluntary dismissal, but argue it was not a concession Son's claims lacked merit because the decision was made to preserve the July 2012 trial date.  In support of this assertion they point to Low's statements at the demurrer hearing concerning his desire to keep the trial date, even if doing so meant forgoing claims against Nobutama that he and Son believed were meritorious.

We agree with Son and the Attorney Defendants that the proceedings below left doubt as to Nobutama's liability and, therefore, Son's voluntary dismissal did not amount to a determination in favor of Nobutama on the merits in this case.  Low was clear that his client wanted to preserve the upcoming trial date and that Son was willing to forgo meritorious claims against Nobutama to keep that date.  Under these circumstances, the decision not to amend the complaint and accept the judgment against Son did not amount to a termination on the merits.  Rather, the termination at that stage was based on Son and the Attorney Defendants' desire to move the case towards trial without additional delay. (See *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 881 ["The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves

10

technical, procedural or other reasons that are not inconsistent with the defendant's guilt."].)

B

Even if we assume for argument that Son and the Attorney Defendants' decision not to amend was a termination on the merits in favor of Nobutama, we agree with the trial court that probable cause to assert claims against Nobutama existed. The "existence or nonexistence of probable cause is a legal question to be resolved by the court . . . ." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817 (*Wilson*).) "[P]robable cause is determined objectively, i.e., without reference to whether the attorney bringing the prior action believed the case was tenable." (*Ibid*.)

The "standard of probable cause to bring a civil suit [is] equivalent to that for determining the frivolousness of an appeal [citation], i.e., probable cause exists if 'any reasonable attorney would have thought the claim tenable.' [Citation.] This rather lenient standard for bringing a civil action reflects the 'important public policy of avoiding the chilling of novel or debatable legal claims.' " (*Wilson*, supra, 28 Cal.4th at p. 817.) "Attorneys and litigants . . . ' "have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ." ' [Citation.] Only those actions that ' "any reasonable attorney would agree [are] totally and completely without merit" ' may form the basis for a malicious prosecution suit." (*Ibid*.) " ' "Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win. . . ." ' " (*Jarrow Formulas, Inc. v. LaMarche, supra*, 31 Cal.4th at p. 742.)

11

Nobutama argues Son and the Attorney Defendants lacked probable cause to bring contract claims against it because Son lacked standing and because Nobutama was not a party to the sales agreement and, in fact, was not in existence at the time the agreement was entered. Similarly, with respect to Son's tort causes of actions, Nobutama argues probable cause was lacking because it did not exist at the time the alleged misrepresentations were made and nothing it did later contributed to the alleged fraud. Nobutama also asserts there was no probable cause to bring a claim for violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) because ICG, not Son, was Nobutama's competitor.

Son and the Attorney Defendants respond that Nobutama's arguments are premised on a standard that is too high. They assert they were not required to show their claims would ultimately have succeeded, only that no reasonable attorney could have thought the claims tenable. Son and the Attorney Defendants also assert that in addition to the alter ego theory the trial court initially rejected, there were several theories of liability under which Son could have asserted claims against Nobutama, including conspiracy, aiding and abetting, and respondeat superior.

We agree with Son and the Attorney Defendants that the standard Nobutama asserts is too high. The plaintiffs in the underlying litigation were not required to establish their claims would ultimately be successful, only that there was a basis to assert them. (See *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1019 [" ' "To hold that the person initiating civil proceedings is liable unless the claim proves to be valid, would throw an undesirable burden upon those who by advancing claims not heretofore

12

recognized nevertheless aid in making the law consistent with changing conditions and changing opinions." ' "].) Son amended her complaint because Low had recently learned Nobutama was soliciting business from Tri-City Medical in violation of the sales agreement (a factual finding ultimately made by the court after trial) and that Nobutama appeared to be a sham corporation. These facts provided the necessary probable cause for Son to assert claims against Nobutama. Nobutama has not shown that no reasonable attorney would have found these claims tenable.[7]

C

Finally, even if we assume Nobutama could have established the first two elements of its malicious prosecution claims, it failed to present evidence that Son or the Attorney Defendants brought their claims with malice. The element of malice focuses on the defendant's subjective intent in initiating the prior action. (*Sheldon Appel Co. v. Albert & Oliker, supra,* 47 Cal.3d at p. 874; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.) To establish malice, Nobutama was required to show by a preponderance of the evidence that Son and the Attorney Defendants brought claims

---

[7] Son's claims sounding in contract are arguably less tenable than those sounding in tort because Nobutama did not yet exist at the time Son entered the sales agreement. Son and the Attorney Defendants, however, assert Nobutama could be held liable for breach of contract based on a theory of reverse alter ego. They contend Nobutama was a sham corporation created for the purpose of competing against Tri-City Florist since Mark was barred from doing so by the sales agreement. This is a novel theory that may have been ultimately rejected (see *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1524 [rejecting application of "outside reverse [corporate] piercing" to add corporation as judgment creditor]), but we do not agree that no reasonable attorney would have thought the claim tenable. In any event, because Nobutama did not establish there was a termination on the merits in its favor in the underlying litigation, any lack of probable cause for the contract claims does not warrant reversal.

13

against Nobutama based on hostility or ill will, or for another improper purpose. (See *Ross v. Kish* (2006) 145 Cal.App.4th 188, 204.) "Suits with the hallmark of an improper purpose are those in which: ' " . . . (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; [or] (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim." ' " (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1157.)

Aside from its assertion that Son and the Attorney Defendants lacked probable cause, as evidence of malice Nobutama points only to (1) Son's lack of standing to pursue her claims and (2) Nobutama's counsel's request that Son and the Attorney Defendants dismiss the claims against it based on the fact that Nobutama was not registered with the California Secretary of the State until December 2010. We do not agree with Nobutama that these facts support an inference of malice on the part of Son or the Attorney Defendants. As Nobutama itself points out, Son's standing was not finally adjudicated until trial when the court found she did not have standing to pursue her contract claims because the business had vested in ICG, not Son individually. Son disagreed with this finding and pursued her claims through an appeal in this court. That she was ultimately not successful does not show she pursued her claims for an improper purpose.

Nobutama's assertion that Son's refusal to dismiss her claims on Nobutama's counsel's demand supports an inference of malice is also without merit. At the time

14

Nobutama demanded that Son dismiss her claims, Low had recently learned the Lees had been violating the noncompetition provision of the sales agreement through Nobutama. This evidence reasonably supported the Attorney Defendant's and Son's decision to pursue claims against Nobutama. Nobutama's contrary position concerning its liability at the time is not evidence of malice on the part of Son or the Attorney Defendants. (See *Marijanovic v. Gray, York & Duffy* (2006) 137 Cal.App.4th 1262, 1272, fn. 5 ["[I]t could well constitute malpractice for an attorney to drop a lawsuit, for which supporting evidence existed, merely because opposing counsel asserted the action was baseless."].) In sum, we agree with the trial court that Nobutama failed to present evidence from which malice could be inferred.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs of appeal.


NARES, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.